PEOPLE v MITCHELL

1. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—IN-CUSTODY AC-
   CUSED—RIGHT TO COUNSEL.

   Identification by photographs should not be used where the
   accused is in custody, subject to certain exceptions; where there
   is a legitimate reason to use photographs for identification of
   an in-custody accused, the accused has the right to counsel as
   much as he would for corporeal identification procedures.

2. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—FAIRNESS—SUG-
   GESTIVENESS.

   The fairness of an identification procedure must be evaluated in
   the light of the totality of the circumstances; the test is the
   degree of suggestion inherent in the manner in which the
   suspect's photograph is presented to the witness for identifica-
   tion.

3. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—SUGGESTIVENESS
   —MISIDENTIFICATION.

   Convictions based on eyewitness identification at trial following a
   pretrial identification by photograph will be set aside on that
   ground only if the photographic identification procedure was so
   impermissibly suggestive as to give rise to a very substantial
   likelihood of irreparable misidentification.

4. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—PRE-CUSTODY
   IDENTIFICATION—PROBABLE CAUSE—RIGHT TO COUNSEL.

   A defendant was not entitled to the presence of counsel at a
   photographic identification, arising out of the armed robbery of
   a store, where the defendant was not in custody, probable cause
   to arrest defendant prior to the identification did not exist, and
   the only evidence against defendant at the time of the identifi-

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[6] 67 Am Jur 2d, Robbery §§ 68, 69.
[7, 8] 58 Am Jur 2d, New Trial § 163.
[9] 76 Am Jur 2d, Trial §§ 1075, 1080.
[10] 21 Am Jur 2d, Criminal Law §§ 341, 369.

cation was that his fingerprints were found at the scene of the crime.

5. Criminal Law—Photographic Identification—Suggestiveness —Unfairness.

A pre-custody photographic identification was not unfairly suggestive where an examination of the nine photographs which were shown to the witness reveals all nine photographs are of young black males some of whom possess remarkably similar characteristics, the witness did not feel he had to pick out one of the photographs, and the police did not tell the witness anything to lead him to believe that there was a suspect among the nine photographs.

6. Robbery—Instructions to Jury—Specific Intent.

Failure to use the term "specific intent", when instructing the jury in an armed robbery trial, was not error where the court carefully described the elements of the offense with clarity and precision, the instructions were sufficient to convey the meaning of specific intent, and the defendant conceded that an armed robbery had been committed but asserted he was not the person who committed it.

7. Criminal Law—Attorney and Client—Mistake of Counsel— Failure to Object—New Trial—Decisive Mistake.

A criminal defendant may be granted a new trial because of his lawyer's mistake, despite failure to preserve the error by timely objection, where the mistake is of such serious proportion that it may have been decisive and but for the mistake the defendant might not have been convicted.

8. Criminal Law—Attorney and Client—Mistake of Counsel— Fair Trial—Effective Assistance—Narcotics Use—Jury— Decisive Mistake.

A defense counsel's mistake of informing the jury that defendant was a narcotics user in a trial for armed robbery did not deny defendant a fair trial or the effective assistance of counsel where it does not appear either that the mistake was of such serious proportion that it may have been decisive or that but for the mistake the defendant might not have been convicted.

9. Criminal Law—Trial—Judges—Discretion—Mistrial—Cross-Examination—Evidence—Relevance—Materiality.

Grant or denial of a mistrial, the extent of cross-examination, and questions of relevance and materiality of evidence rest within the sound discretion of the trial judge.

10. CRIMINAL LAW—DUTY OF PROSECUTION—EVIDENCE—GUILT OR IN-
    NOCENCE.

> Failure of the prosecution to investigate and obtain fingerprints
> from various points inside the store where a robbery occurred
> was not a breach of the prosecution's duty to furnish all the
> evidence bearing upon the issue of guilt or innocence where
> there was no indication that the robber touched anything
> except a cigarette carton and a cash register tray, and those
> two items were tested for fingerprints.

Appeal from Washtenaw, Patrick J. Conlin, J. Submitted Division 2 January 15, 1975, at Lansing. (Docket No. 18976.) Decided May 27, 1975.

Kenneth J. Mitchell, Jr., was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Assistant Prosecuting Attorney, for the people.

*Marc L. Goldman,* Assistant State Appellate Defender, for defendant.

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

D. E. HOLBROOK, J. Defendant Kenneth J. Mitchell, Jr., after a three-day trial in June 1973, was found guilty by a jury of the offense of robbery armed, contrary to MCLA 750.529; MSA 28.797. He was sentenced to a prison term of 7 to 20 years, and now brings this appeal as of right.

At approximately 10:45 p.m., January 25, 1973, a lone gunman robbed the Beehive Party Store in Pittsfield Township, taking $540.81 in cash and some cigarettes. The victim, David Khoury, described the robber as a Negro, approximately 6 feet in height, wearing a black hat and a dark

blue scarf. Mr. Khoury testified that the gunman used the hat and scarf to cover part of his face. The scarf came up to approximately the middle of his nose and the cap came down to about the middle of his forehead.

Daniel Cook, a Washtenaw County Sheriff's Department detective, arrived at the Beehive Party Store shortly after the robbery took place. Detective Cook questioned Mr. Khoury as to what places the defendant had touched during the robbery, and Mr. Khoury advised the detective that the robber had lifted a tray out of a cash register and had also touched a carton of cigarettes sitting on the counter. Detective Cook removed the carton of Kool cigarettes and the cash register tray from the store and turned these items over to the Plymouth Crime Lab in order to have the items checked for fingerprints. Detective Cook did not endeavor to obtain fingerprints from any other area of the store.

One week after the robbery, on February 1, 1973, trooper Jerry Difler matched prints of defendant's middle finger with a print taken from the cardboard cigarette carton found at the scene of the crime. Trooper Difler gave this information to detective Cook on the same day. After receiving this information, detective Cook assembled a display of nine photographs, including a photograph of defendant, and presented the photographs to David Khoury, the victim of the robbery. After looking at the nine photographs, Mr. Khoury picked out the photograph of defendant, and indicated that it was the photograph of the man who robbed him. Later on the same day, February 1, 1973, defendant Mitchell was arrested and charged with the armed robbery of the Beehive Party Store.

During the preliminary examination held on February 7, 1973, Mr. Khoury selected defendant's photograph as the one which he had selected at the identification proceeding held six days earlier. This identical selection process was repeated in court chambers on June 10, 1973, the day before the commencement of defendant's trial, and again during trial on June 11, 1973. Counsel for defendant was not present at the first photographic identification proceeding held on February 1, 1973, but the record indicates that defendant was represented by counsel at all subsequent photographic identification proceedings.

David Khoury also made an in-court identification of defendant, but indicated that he could not be positive that defendant was the individual who robbed him.

Defendant raises several issues, which we consider in order.

I

Was defendant entitled to the presence of counsel at the pre-custody photographic identification procedure?

As indicated in the statement of facts, defendant was not represented by counsel at the original photographic identification proceeding which was held on February 1, 1973. Defendant had not yet been arrested when this photographic show-up took place; his arrest was made later on that same day. However, defendant vigorously contends that the investigation of the crime had focused on defendant to the point where there was definitely probable cause for his arrest *before* the photographic show-up was held, and therefore, because he *should* have been in custody, he should be

regarded as having been in custody for the purpose of properly evaluating this issue on appeal.

As both defendant and the people point out in their briefs, the Michigan Supreme Court has given comprehensive consideration to the issue of photographic identification procedures in two rather recent cases: *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), and *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974). The Supreme Court in *Anderson* set forth the following two rules: (1) subject to certain exceptions, identification by photographs should not be used where the accused is in custody, and (2) where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures. In *Lee,* the Supreme Court at pp 625–626; 218 NW2d 658–659, turned its attention to the pre-custody photographic lineup; and the pertinent portion thereof reads as follows:

"The *Franklin Anderson [People v Franklin Anderson,* 389 Mich 155, 186–187; 205 NW2d 461, 476 (1973)] rule attaches with custody. Compare *People v Cesarz,* 44 Ill 2d 180; 255 NE2d 1, 4 (1969); *United States v Zeiler,* 427 F2d 1305, 1307 (CA 3, 1970); *State v Keel,* 5 NC App 330, 335–336; 168 SE2d 465, 468–469 (1969). Defense counsel's argument that the right to counsel attaches once 'an investigation has focused' on a particular suspect is an inaccurate one, insofar as it is supposed to refer to 'pre-custody' investigations. The cases to which th defendant refers are *in*-custody not *pre*-custody cases. [Emphasis in original.]

"We decline to extend the reasoning of *Franklin Anderson* to the pre-custody, pre-questioning, mere suspicion phase that was evidenced here. It is not feasible to require appointment of counsel in cases of pre-custody photographic showups where there is no detention of the defendant since under such a rule each photograph arguably depicts a suspect and therefore each

person whose photograph appears in the photographic display, or perhaps even the 'mug book' would require the representation of counsel. That would be impossible and absurd.

"Even though we do not require the presence of counsel at the pre-custody photographic identification stage, we recognize that an improper photographic identification procedure may bias the case against the accused—because the procedure may be so suggestive as to identify a picture in the witness's mind with the defendant, or because of the psychological compulsion to stick by a previous identification. See *People v [Franklin] Anderson,* 389 Mich 155, 215–220; 205 NW2d 461, 491–494 (1973); P. Wall, *Eye-Witness Identification in Criminal Cases,* 66–89 (1965, 2d printing 1971); Comment, *Criminal Procedure—Photo Identifications,* 43 NYU L Rev 1019 (1968). Therefore, it is important that there be safeguards to protect the innocent from misidentification. The showup procedures must minimize suggestiveness for viewers whenever possible.

"The fairness of the identification procedure must be evaluated in the light of the totality of the circumstances. The test is the degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification. See *United States v Zeiler, supra,* 1308; *State v Rowe,* 77 Wash 2d 955, 956–957; 468 P2d 1000, 1001–1002 (1970); and *People v Eubank,* 46 Ill 2d 383, 384–388; 263 NE2d 869, 871–873 (1970). The United States Supreme Court stated in *Simmons v United States,* 390 US 377, 384; 88 S Ct 967; 19 L Ed 2d 1247 (1968), that:

" '[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure *was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'* (Emphasis added.)"

In the case at bar, defendant claims that the police clearly had probable cause to arrest him once his fingerprints were matched with those

found on a carton of cigarettes left at the scene of the crime. Defendant further contends that because he was available for a properly conducted lineup, and because he could easily have been arrested prior to the photographic show-up on February 1, 1973, rather than almost immediately thereafter, he should have been entitled to the presence of counsel even though he was not actually in custody at the time the photographic show-up was held.

We disagree with defendant's contention. The only evidence that the police had at the time of the original photographic show-up that defendant might have committed the robbery was the matching set of fingerprints. Fingerprints on the cigarette carton could just as easily have belonged to a legitimate customer in the store as to the defendant. There did not exist sufficient probable cause for the arrest of defendant prior to the photographic identification procedure held on February 1, 1973, and therefore, under the authority of *Anderson* and *Lee, supra,* defendant was not entitled to the presence of counsel at the original precustody photographic show-up.

II

Is there any evidence to indicate that the precustody photographic identification procedure was unfairly suggestive?

Defendant alleges error in the photographic identification procedure by claiming that the show-up held on February 1, 1973, was unfairly suggestive. Defendant bases his claim primarily on the fact that David Khoury, the victim of the crime, was unable to be completely positive about his identification of defendant at both the preliminary examination and the trial itself.

As the Supreme Court stated on p 626; 218 NW2d 659, of *Lee, supra,* the fairness of the photographic identification procedure must be evaluated in the light of the totality of the circumstances. The test is the degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification.

The best way to evaluate the possibility of suggestiveness in the instant case is by means of a careful examination of the nine photographs which were shown to the victim of the robbery on February 1, 1973. Such an examination reveals that all nine photographs are of relatively young black males, some of whom possess remarkably similar characteristics. Furthermore, the testimony provided by David Khoury at both the preliminary examination and the trial itself indicates that there was nothing suggestive in the manner in which the original photographic show-up was conducted. For example, Mr. Khoury testified at the preliminary examination that he did not know the police had any pictures until they were actually shown to him. He stated that when he was shown the nine pictures, he did not feel that he had to pick one of them out. And at the trial itself, Mr. Khoury testified that the police did not tell him anything to lead him to believe that there was a suspect among the nine photographs.

The original photographic show-up was not unfairly suggestive and, therefore, was legal.

III

Were the trial court's instructions to the jury regarding the offense of armed robbery inadequate because the court did not define or mention the term "specific intent"?

Defendant asserts that the trial court gave the jury an inadequate instruction on the elements of the offense of armed robbery. Defendant bases his claim on the fact that the court did not define or mention the term "specific intent" in its charge to the jury.

Defendant correctly points out that armed robbery is a specific-intent offense. This does not mean, however, that a court is required to use the phrase "specific intent" in an instruction to the jury. The actual instruction, in pertinent part, given by the trial court is as follows:

"The statute creating this offense, so far as it is material, provides as follows: Any person who shall assault another or shall feloniously rob and steal or take from his person or in his presence, any money or other property which may be the subject of larceny, such robber being armed with a dangerous weapon or any article used or fashioned in order to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony and shall be punished, et cetera. On a prosecution under this statute, it must be established by the prosecution, first, that the respondent committed an assault upon the complaining witness; secondly, that at the time of such assault he stole from the person of such witness or in his presence money or other property which may be the subject of a larceny; and third, at the time of such robbery the respondent was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complaining witness to reasonably believe it to be a dangerous weapon. An assault has been defined as an attempt or offer, with force and violence, to do corporal hurt to another, with a present ability to carry the intention into effect. The value of the property taken is immaterial so long as it actually has some value. It must be taken by the respondent with a felonious intent without any claim or power of right in order to constitute a robbery. It must be taken from the person of the complaining witness or in his immediate

presence and against his will. A dangerous weapon may be defined as an instrument reasonably calculated to produce death or serious bodily injury in the manner in which it is used."

The trial court described the elements of the offense of armed robbery with clarity and precision. Each and every element was carefully explained by the trial court. And the statement, "It [the property] must be taken by the respondent with a felonious intent without any claim or power of right in order to constitute a robbery" is regarded as sufficient to convey the meaning of "specific intent". Furthermore, defendant clearly conceded that an armed robbery had, in fact, been committed, but asserted that he was not the person who had committed it.

There was no error in the instructions.

## IV

Was defendant denied a fair trial and his right to the effective assistance of counsel because defense counsel introduced evidence of defendant's heroin use?

During the trial, defense counsel attempted to establish defendant's height by means of the introduction of his arrest card which contained that fact. Unfortunately, the arrest card also contained a notation that defendant was a narcotics user. Shortly after its admission into evidence, the card was passed to the jury for their examination.

Defendant now contends that his trial counsel made such a serious mistake in bringing the information pertaining to defendant's narcotics use to the attention of the jury that defendant was denied a fair trial and his right to the effective assistance of counsel. In support of this claim,

defendant cites the following discussion from *People v Degraffenreid,* 19 Mich App 702, 716; 173 NW2d 317, 324 (1969):

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial."

Although the offer of the exhibit could be questioned and determined to be a mistake, we do not feel that such mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted.

V

Was defendant denied a fair trial because the trial court, over repeated objections by defense counsel, permitted the prosecutor to inquire into defendant's heroin habit and his source of heroin?

As indicated in the discussion of the preceding issue, defense counsel brought to the attention of the jury the fact that defendant was a narcotics user. In his cross-examination of defendant, the prosecutor legitimately asked defendant if he had been convicted of possession of heroin, and defendant responded affirmatively. The prosecutor then proceeded to question defendant in considerable detail not only about his use of heroin, but also with respect to his source of the drug. This line of questioning pertained in part to inconsistencies present in his trial testimony when compared to a statement he gave prior to trial to Lt. Schultz. We are presented with the question in the instant case

of whether the prosecutor's cross-examination of defendant was so improper as to constitute prejudicial error.

In two cases decided in 1971, this Court reached opposite results with respect to this issue. The people cite *People v Talaga,* 37 Mich App 100; 194 NW2d 462 (1971), where defendant was charged with and convicted by jury verdict of armed robbery. During cross-examination, defendant was asked, "Mr. Talaga, is it true you are a heroin addict?" Defense counsel's objection was sustained, but the trial court then permitted the prosecutor to continue to question defendant with respect to his drug addiction. In analyzing the question of whether the trial judge should have granted the mistrial requested by defense counsel, this Court stated at pp 102–103; 194 NW2d 463:

"Grant or denial of a mistrial rests in the sound discretion of the trial judge, *People v Qualls,* 9 Mich App 689; 158 NW2d 60 (1968). The extent of cross-examination is left to the sound discretion of the trial judge, *People v Layman,* 299 Mich 141, 148; 299 NW 840 (1941), as are questions of relevance and materiality of evidence, *People v Bunker,* 22 Mich App 396, 408; 177 NW2d 644, 650 (1970).

"This record does not demonstrate an abuse of discretion either in the denial of mistrial or the extent of the cross-examination. Whether the defendant was a heroin addict at or near the time of the offense was relevant and material to the establishment of a motive for defendant's commission of the crime charged. Motive, if established, would tend to rebut defendant's contention that he was at home and knew nothing of the charge made against him.

"The information sought relative to defendant's heroin addiction was also relevant and material on the question of defendant's credibility."

The other case, cited by defendant in support of

his position, is *People v Ball,* 33 Mich App 288; 189 NW2d 816 (1971). We believe that *Talaga* is most appropriate here.

The facts in the present case compare favorably with the facts in the *Talaga* case, except for the improper question concerning the source of the heroin. After careful consideration, we come to the conclusion that the question and answer concerning the source of the heroin was not so prejudicial as to call for a different result than was reached. *Talaga, supra.*

## VI

Did the prosecution breach its duty to furnish all the evidence bearing upon the issue of guilt or innocence by its failure to investigate and obtain fingerprints from various points inside the store where the crime occurred?

The final claim made by defendant is that the prosecution breached its duty to furnish all the evidence bearing upon the issue of guilt or innocence because of its failure to investigate and obtain fingerprints from various points inside the store where the robbery occurred.

Defendant claims that other areas of the store should also have been checked for fingerprints, but no clear evidence was presented at trial to indicate that defendant touched anything except for the cash register and carton of cigarettes. This issue is without merit. Detective Cook took and tested the cash register tray and the cigarette carton from the Beehive Party Store, the only two items susceptible of fingerprints.

Affirmed.