PEOPLE v WRIGHT

PEOPLE v HAYDEN

Opinion of the Court

1. Witnesses—Criminal Law—Expert Witnesses—Suggestive Police Techniques—Identification Evidence—Abuse of Discretion.

A trial judge's refusal to allow a psychiatrist to take the witness stand for the purpose of testifying about how a complainant's identification of the defendants had been influenced by allegedly suggestive police techniques in the identification procedure was not an abuse of discretion where the psychiatrist had never examined the complainant.

2. Rape—Elements—Penetration—Instructions to Jury—Appeal and Error.

Penetration is an essential element of the crime of rape and a jury must be told that they may not convict unless they find that penetration occurred; where this portion of the instructions on a rape charge was omitted, convictions for rape must be reversed and review is not precluded by the defendants' failure to object to the instructions as given.

3. Appeal and Error—Criminal Law—Instructions to Jury—Failure to Object—Omission of Essential Elements—Court Rules.

Review of an improper instruction to the jury is not precluded by a defendant's failure to object where there has been an omission of an instruction on an essential element of the offense charged (GCR 1963, 516.2).

4. Criminal Law—Photographic Identification—Suspect in Custody—Lineup—Right to Counsel.

A photographic identification should not be attempted where a

References for Points in Headnotes
[1] 31 Am Jur 2d, Expert and Opinion Evidence § 181.
[2] 65 Am Jur 2d, Rape § 3.
[3] 75 Am Jur 2d, Trial §§ 713, 715, 906.
[4–15] 21 Am Jur 2d, Criminal Law §§ 334, 341, 368, 369.

suspect is known to be in custody or can readily be produced for a lineup; under those circumstances, a lineup attended by counsel must be held.

5. CRIMINAL LAW—IDENTIFICATION—ACTUAL SUSPECTS—MERE SUSPICION—READILY AVAILABLE FOR LINEUP.

A defendant must have been an actual suspect, which requires more than a mere suspicion of guilt, as well as readily available for a formal lineup before the protective rules for identification procedures can be invoked.

6. CRIMINAL LAW—RIGHT TO COUNSEL—CONSTITUTIONAL LAW—PHOTOGRAPHIC DISPLAY—PRE-CUSTODY IDENTIFICATION.

There is no right to counsel at a pre-custody photographic display.

7. WITNESSES—CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—MANNER OF PRESENTATION.

Testimony about photographic identification was properly admitted at trial where the record shows that the identification process was properly conducted.

8. CRIMINAL LAW—IDENTIFICATION PROCEDURES—SUSPECTS—ESTABLISHED PROTECTION.

It was improper for the police to stage an "accidental" confrontation between a complaining witness and two suspects for purposes of identification of the suspects where the witness had already tentatively identified the suspects and these persons were no longer under mere suspicion but were actual suspects; as such they were entitled to the protective rules for identification procedures.

9. CRIMINAL LAW—IDENTIFICATION PROCEDURES—STAGED CONFRONTATION—SUGGESTIVENESS.

It was error to admit testimony about a complaining witness's identification of the defendants at an improper staged confrontation between the witness and the defendants after the defendants had become suspects even though the procedure at the confrontation was not improperly suggestive.

10. WITNESSES—CRIMINAL LAW—IN-COURT IDENTIFICATION—OUT-OF-COURT IDENTIFICATION—INDEPENDENT BASIS.

A witness may not be allowed to identify a defendant in court if the identification is the product of an improper out-of-court procedure; however, the in-court identification may be allowed if it has a basis independent of the out-of-court identification.

11. WITNESSES—CRIMINAL LAW—IDENTIFICATION TESTIMONY—INDE-
PENDENT BASIS—OUT-OF-COURT IDENTIFICATION.

A trial judge's finding of an independent basis for a complaining witness's in-court identification of the defendants was not clearly erroneous where the witness had had extensive opportunities to observe the defendants and the witness had been consistent and certain in her identification, and where the record shows that the out-of-court identifications were not improperly suggestive.

12. CRIMINAL LAW—EVIDENCE—IDENTIFICATION TESTIMONY—HARM-
LESS ERROR.

The admission of identification testimony concerning an improper, staged confrontation between the complaining witness and the defendants where the defendants were the primary suspects and were available for a formal lineup was erroneous, but was harmless error and does not require reversal where there was other strong identification testimony.

DISSENT BY E. H. PAPP, J.

13. CRIMINAL LAW—EVIDENCE—IDENTIFICATION TESTIMONY—OUT-OF-
COURT IDENTIFICATION—TOTALITY OF CIRCUMSTANCES.

*A determination on the admissibility of testimony regarding a pretrial identification requires that the totality of circumstances be examined; this totality includes: (1) the suggestive aspects of the procedure itself; (2) the justification for the procedure used; and (3) the reliability of resulting identification.*

14. CRIMINAL LAW—EVIDENCE—OUT-OF-COURT IDENTIFICATION—TEST-
ING FOR RELIABILITY—FACTOR.

*The factors used for testing the reliability of an out-of-court identification of a defendant include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.*

15. CRIMINAL LAW—EVIDENCE—IDENTIFICATION TESTIMONY—IM-
PROPER IDENTIFICATION PROCEDURES—SUGGESTIVENESS.

*The admission of testimony regarding a complaining witness's identification of the defendants at an improper, staged confrontation between the defendants and the witness cannot be viewed as harmless error and the convictions should be re-*

*versed where the confrontation was patently suggestive and the reliability of the witness's other identifications is questionable, thus failing to establish an independent basis for the in-court identification of the defendants, and where there is no real corroborative evidence connecting the defendants with the crime.*

Appeal from Genesee, Donald R. Freeman, J. Submitted June 2, 1976, at Lansing. (Docket Nos. 21809-10, 21104-05.) Decided September 7, 1976.

Robert N. Wright and Michael B. Hayden were convicted of attempted murder, rape, and larceny from a person. Defendants appeal. Convictions for rape reversed. Convictions for attempted murder and larceny from a person affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Wistrand, Wistrand* and *Brendle,* for defendant Wright.

*Shaheen & Shaheen,* for defendant Hayden.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

ALLEN, P. J. The defendants were convicted of attempted murder. MCLA 750.91; MSA 28.286 (and sentenced to life imprisonment), rape, MCLA 750.520; MSA 28.788 (repealed by 1974 PA 266), (30–50 years) and larceny from a person, MCLA 750.357; MSA 28.589, (6–10 years). The sentences were set to run consecutively with a 22–40 year sentence imposed following defendants' conviction

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

at an earlier trial on another rape charge. The defendants allegedly committed the offenses involved in the present appeal while free on bond pending trial on the other charge. Their convictions on that charge have already been affirmed by this Court *(People v Wright,* docket #18753-4, memorandum opinion released November 29, 1974, *People v Hayden,* docket #18884-5, memorandum opinion released November 29, 1974).

At approximately 2 a.m. on August 6, 1973, the complainant was abducted just outside her parents' home in Genesee County by two men who forced her into their car, drove to a secluded area and then raped her. One of the men then choked her with a piece of her own clothing, causing her to lose consciousness. When she awoke several hours later, she walked a short distance to a main road where she was spotted by a motorist and taken home.

She was questioned briefly by Genesee County deputies at her home and at the emergency room of the hospital where she was taken for treatment. She told the officers that her assailants were two black men, one much taller than the other. She also remembered that both men had medium length hair, and that one had some facial hair. That description fit the defendants in only a very general sense. Both defendants are tall, (6′ 5″ and 6′ 1″), but the complainant initially estimated that both assailants were under 6′.

Attempts to get a description of the assailants' car were even less successful. It was initially described as maroon, but later was described as "light colored" with no specific color mentioned. The complainant was certain that the car was rather large.

The defendants' names came to the attention of the Sheriff's Department when the detective in charge of the case called the Flint Police Department to inquire about similar cases. He was told about the defendants whose trial on the other rape charge was about to start. After securing photographs of the defendants, the detective selected 10 other pictures from his files and went to the complainant's home. Showing the pictures one by one, he instructed her to reject the pictures of men who definitely were not her attackers and set aside any who might be the guilty persons. Of the 12 photos, she selected the defendants as the only two possible suspects.

The police knew that the defendants would be in court the next day. They asked the complainant to come to the courthouse (also police headquarters) on the pretext of obtaining additional physical evidence from her. Their hope was that she would accidentally encounter the defendants and spontaneously identify them. When the "accidental" meeting failed to occur, the complainant was taken to the parking lot and asked if any of the cars there were the same color as the one in which she had been attacked. But she was too uncertain about the color to pick out any car. A car which the officers knew belonged to one of the defendants was one of several which were specifically pointed out to her.

In a further attempt to arrange a "chance" confrontation, the complainant was asked to return after lunch. She was then taken to the parking lot, again with the pretext of looking for cars with similar colors. The defendants drove into the parking lot about 15 minutes later. The detective with the complainant pointed out the car as he had several preceding ones. She had no reaction to

the car; but she immediately asked if she could get a closer look at the occupants.

A direct confrontation was arranged by waiting for the defendants by the courthouse elevators and riding with them up to the 5th floor where their trial was taking place. The complainant then definitely identified the defendants. They were arrested later that day.

Prior to trial, a *Wade*[1] hearing was held on the defense motion to suppress the identification testimony. The trial judge found no error in the police procedures and denied the motion.

The complainant identified the defendants at trial. She also testified about the earlier photographic and parking lot identifications.

As part of the defense, defendants sought to present the testimony of a psychiatrist—*apparently* to testify about how the complainant's identification of the defendants had been influenced by the allegedly suggestive police techniques. The trial judge refused to allow the psychiatrist to testify, noting specifically that the doctor had never examined the complainant. We hold that the ruling was not an abuse of discretion. *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974).

In his instructions to the jury, the judge stated that, in order to convict, they must find that the defendants had carnal knowledge of the complainant; but he failed to state that carnal knowledge meant penetration. There was no objection to the instruction as given. Penetration is an essential element of the crime of rape and a jury must be told that they may not convict unless they find that penetration occurred. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974). Since the

---

[1] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

omission involved an essential element of the offense, review is not precluded by the defendant's failure to object to the instruction as given. GCR 1963, 516.2, *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967). While we seriously doubt that the jury was misled, the omission in this case was too basic to be ignored. The defendants' convictions for rape must be reversed.

However, that ruling does not affect the convictions for attempted murder and larceny from a person. The defendants argue that those convictions must be overturned because the identification procedures detailed earlier in this opinion were improper. The photographic identification and the parking lot identification are discussed separately below. In connection with each, three questions must be addressed: (1) Should a formal line-up have been used instead? (2) Should the defendants' attorneys have been present? (3) Were the procedures unduly suggestive?

### The Photographic Identification

Interpreting a series of US Supreme Court cases,[2] and at times announcing more protective rules based on Michigan law, our Supreme Court has held that a photographic identification should not be attempted where a suspect is known to be in custody or can readily be produced for a lineup. Under those circumstances, a lineup attended by counsel must be held instead. *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

---

[2] *United States v Wade, supra,* note 1, *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), *Kirby v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972), *United States v Ash,* 413 US 300; 93 S Ct 2568; 37 L Ed 2d 619 (1973).

The defendants in the present case were free on bond awaiting trial on the other charge when the photographs were shown to the complainant. They were not "in custody" but they could have been "readily produced for a lineup". In both *People v Smalls,* 61 Mich App 53; 232 NW2d 298 (1975), and *People v Beasley,* 55 Mich App 583; 223 NW2d 77 (1974), the use of photographs instead of a lineup was found to be improper where the defendants were free on bond.

But the present case is distinguishable. Two factors must be present in order to invoke the rules of *People v Anderson, supra.* In addition to having been readily available for a lineup, the defendants must also have been "suspects". We find that the latter showing has not been made. At the time of the photographic display, there was absolutely no evidence linking the defendants to this crime. Their pictures were included solely because of the other charges against them—and because the assailants were black men. At that point, the evidence would have supported at most a "mere suspicion" of guilt. *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974), held that a mere suspicion is not enough to invoke the *People v Anderson, supra,* rules.

For similar reasons, we hold that the defendants did not have a right to have counsel present at the photographic identification. *People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975).

We also reject the defendants' argument that the photo display was conducted in an improperly suggestive manner. We have examined the photographs shown to the complainant and the manner of presentation as described in the *Wade* hearing transcript. The identification was properly conducted. *People v Mitchell,* 61 Mich App 153; 232

NW2d 340 (1975). Therefore, testimony about the photographic identification was properly admitted at trial. Contrast *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967).

## The Parking Lot Identification

We have not been able to discover a post-*Wade* case involving an analagous procedure, *i.e.,* a confrontation deliberately staged by the police without the knowledge of their own witness. Thus, the present case is distinguishable from on-the-scene confrontations,[3] accidental confrontations[4] and staged confrontations planned jointly by the police and their witness.[5] We hold that use of this apparently unique procedure was improper at that stage of the investigation.

The complainant had already tentatively identified the defendants at the photographic display. It is clear that they then became "suspects", and consequently entitled to the protections of *People v Anderson, supra, People v Jackson, supra.*

Since the parking lot confrontation should never have occurred at all, the right to counsel issue is not properly before us.

Our third inquiry, *viz.:* an evaluation of the suggestiveness of the parking lot procedure, leads us to conclude that the procedure was not improperly suggestive. We accept the complainant's testimony that she was unaware of the real purpose of her visit to the parking lot; thus, we are impressed by the spontaneity and definiteness of the identification which followed.

But that confrontation should never have occur-

---

[3] *People v Johnson,* 59 Mich App 187; 229 NW2d 372 (1975).

[4] *People v Hampton,* 52 Mich App 71; 216 NW2d 441 (1974).

[5] *Neil v Biggers,* 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972).

red at all. Therefore, it was error to admit testimony about the identification at trial. *People v Anderson, supra, Gilbert v California, supra.*

### The Courtroom Identification

A witness may not identify a defendant in court if the identification is the product of an improper out-of-court procedure. But the testimony may be admitted if it has a basis independent of the out-of-court identification. *People v Anderson, supra, US v Wade, supra.*

At the *Wade* hearing in the present case, the trial judge expressly found an independent basis for the in-court identification. Given the complainant's extensive opportunities to observe the defendants, the consistency and certainty of her identification, and our conclusion that neither of the out-of-court identifications were improperly suggestive, we hold that the finding of an independent basis was not clearly erroneous.[6] GCR 1963, 517.1.

### Conclusion

Unlike several other cases, the finding of an independent basis for the in-court identification does not resolve this appeal because the witnesses were also allowed to testify about the parking lot confrontation. Contrast *People v Anderson, supra.* We have already held that admission of that testimony was error, but we also believe that, given the strength of the other identification testimony, the error was harmless and does not require rever-

---

[6] We do not decide whether the proper out-of-court photographic identification may be used as part of the independent basis for the in-court testimony. We believe that it should be, since *Wade* requires only that the in-court identification not be tainted by *improper* out-of-court procedures.

sal. GCR 1963, 529.1, *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). In *United States v Wade, supra,* the United States Supreme Court expressly authorized findings of harmless error in this type of case by citing *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). Application of that rule is appropriate in the present case.

For the reasons stated, the convictions for rape are reversed. The convictions for attempted murder and larceny from a person are affirmed.

D. E. HOLBROOK, JR., J., concurred.

E. H. PAPP, J. *(dissenting).* I most respectfully dissent. Although the majority holds that the parking lot incident should never have occurred, they conclude that admission of testimony concerning this out-of-court identification during trial was harmless because of the "strength of the other identification testimony". With that conclusion I cannot agree.

Assuming that defendants were not deprived of their constitutional rights in either the method of presentation or by the photographs themselves, the victim's identification as the result of that presentation was tentative at best. She was 85% sure of one of the defendants and much less sure of the other. It was because of this lack of strength in the first identification that the subsequent incident in the parking lot occurred.

On the second day following the rape, the victim was called to the sheriff's department on the pretext of having more photographs of her injuries and a set of fingerprints taken. The sheriff's detectives' real purpose in summoning her to the station was to stage a confrontation with defendants who were then on trial for another rape in the

courthouse across the parking lot from the sheriff's department.

No confrontation could be staged in the morning. Although all that she had been requested to do had been completed early in the morning the victim was asked to return to the department after she and her mother took a short shopping trip. When the victim returned she was escorted to the parking lot to view colors of cars in an attempt to fix the color of the car in which she had been abducted. One of the three cars pointed out before lunch was that of defendant Wright. The detective then treated the victim and her mother to lunch.

After lunch, one of the detectives waited with the victim at the rear of the courthouse to again view cars as they drove into the parking lot. This was done even though the victim repeatedly stated that she could not identify the color of the car. Within a short time defendants drove by. The victim did not respond to the officer's question of whether that was the color of the car but asked to take a closer look at the occupants.

She was rushed into the courthouse and stood before the elevators which the detective knew defendants would be taking as they returned to court. She made some type of identification as defendants approached the elevator and was then pushed into the elevator by the detective to ride the five floors up with the defendants. On the fifth floor her identification was positive and emphatic.

I agree with the majority that this procedure should not have occurred. The detectives knew defendants were "readily available" for a lineup and that they had counsel to represent them in the other rape prosecution. They must also have known that such a charade would violate defendants' rights. This practice was unconscionable and should not be condoned by the Court.

I cannot accept the majority's conclusion that this procedure was not improperly suggestive. Nor can I accept, as does the majority, that the victim was totally unaware of the real purpose of her visit to the parking lot. She must have had some suspicion as she stood on the steps of the courthouse that something other than the color of the car was in question. She had repeatedly told the detectives that morning that she was unsure of the color and could not identify it.

In determining the admissibility of testimony concerning this pretrial identification the "totality of the circumstances" must be examined. This totality includes (a) the suggestive aspects of the procedure itself, (b) the justification for the procedure used and (c) the reliability of the resulting identification. *United States ex rel Kirby v Sturges,* 510 F2d 397 (CA 7, 1975), *cert den,* 421 US 1016; 95 S Ct 2424; 44 L Ed 2d 685 (1975). Reliability is tested by the factors mentioned in *Neil v Biggers,* 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972).[1]

The majority admits that the procedure should never have occurred. There is agreement then that there was no justification for not holding a corporeal lineup, the preferred method of testing identifications. I would also hold that the show-up was suggestive. The victim must have felt that the police believed these individuals were "the ones". She had tentatively selected their photographs the day before; been shown their car that morning; and no reasonable excuse existed for standing in

---

[1] These factors "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 US at 199–200.

the lot on the pretext of identifying the color of the car. While the subsequent confrontation in the hall and on the elevator strengthened her identification, it seems patently suggestive.

"The confrontation was therefore defective for both of the reasons stated in *Biggers;* the show-up increased the likelihood of misidentification, and that increased risk of error was gratuitous." *United States ex rel Kirby v Sturges, supra* at 404.

See *People v Yacks,* 49 Mich App 444, 449; 212 NW2d 249 (1973).

Applying the reliability standards of *Biggers* does nothing to dispel the conclusion that this testimony was erroneously admitted. Although the victim was with her attackers for a significant period of time, the night was dark and she was forced to look straight ahead while in the car. She was severely beaten and also expressed the belief that she had been drugged. When she was found the morning after the attack she was incoherent and her thinking was "fuzzy".

Before viewing the photographic display, she gave three descriptions of her attackers to the sheriff's department. Each of these descriptions gave various heights and weights, none of which approached defendants' actual height of 6'5" and 6'1". There were also discrepancies in her descriptions of other features of the defendants and the car they were driving.

Based on this record I cannot join in the conclusion that introduction of this testimony was harmless beyond a reasonable doubt. Considerable time was devoted to repeating this testimony at trial. There was no real corroborating evidence connecting defendants with this crime. The strong identifi-

cations that the majority relies upon are in reality a tentative identification one day after the events from the photographs and an in-court identification. Given the intervening events, I would reverse. However, I fully agree with the majority as to the reversal on the rape charge for the reasons therein cited.

These convictions should be reversed.