PEOPLE v HAYDEN

PEOPLE v WRIGHT

Docket Nos. 50046, 50142. Submitted November 12, 1981, at Lansing.
     —Decided May 17, 1983.

   Michael B. Hayden and Robert N. Wright were previously con-
   victed of attempted murder, rape, and larceny from a person
   following a jury trial in Genesee Circuit Court. The Court of
   Appeals reversed the rape convictions and affirmed the other
   two convictions. 71 Mich App 40 (1976). Both Wright and
   Hayden sought leave to appeal in the Supreme Court with
   respect to the convictions which the Court of Appeals had
   affirmed. In lieu of granting leave to appeal, the Supreme Court
   reversed the convictions and remanded for a new trial on the
   basis of pretrial identification procedures and the failure of the
   trial judge to recognize his proper role with respect to the
   challenge to the pretrial identification procedures. 404 Mich
   807 (1978). During the pendency of the Supreme Court's consid-

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 62, 160.
   21A Am Jur 2d, Criminal Law § 852.
[2] 81 Am Jur 2d, Witnesses §§ 419, 420.
[3] 21 Am Jur 2d, Criminal Law §§ 716, 952.
   29 Am Jur 2d, Evidence §§ 371 *et seq.,* 791.
   Admissibility of evidence as to extrajudicial or pretrial identifica-
      tion of accused. 71 ALR2d 449.
[4] 75 Am Jur 2d, Trial § 610.
   Construction of statutes or rules making mandatory the use of
      pattern or uniform approved jury instructions. 49 ALR3d 128.
[5] 5 Am Jur 2d, Appeal and Error § 894.
[6, 8] 31 Am Jur 2d, Expert and Opinion Evidence § 129.
   Admissibility and weight, in criminal case, of expert or scientific
      evidence respecting characteristics and identification of human
      hair. 23 ALR4th 1199.
[7] 75 Am Jur 2d, Trial §§ 61, 62.
   Prejudicial effect of improper failure to exclude from courtroom or
      to sequester or separate state's witensses in criminal case. 32
      ALR2d 358.
[9] 5 Am Jur 2d, Appeal and Error §§ 744, 746, 756.
[10] 4 Am Jur 2d, Appeal and Error § 309.

eration of the application for leave to appeal with respect to the attempted murder and larceny convictions, Wright and Hayden sought in the trial court dismissal of the rape charge on the basis of the failure of the prosecution to retry them within 180 days. The trial court denied the request. The Court of Appeals denied "for lack of merit" their application for leave to appeal from the trial court's denial of their request to dismiss the rape charge. Docket No. 77-4364, order of February 27, 1978. After, the Supreme Court reversed the attempted murder and larceny convictions, a hearing on the pretrial identification was held. Robert M. Ransom, J., determined that the pretrial identification procedures did not taint the victim's in-court identification. Wright and Hayden were jointly retried before a jury on all three charges, Donald R. Freeman, J., presiding. Both defendants were convicted on all three charges. Each defendant appealed. The appeals were consolidated by the Court of Appeals. *Held:*

1. The circuit court did not have jurisdiction to retry Wright and Hayden during the pendency of the application for leave to appeal before the Supreme Court. The 180-day period in which the prosecution had to commence the retrial started to run only when the Supreme Court issued its order reversing the attempted murder and larceny convictions and remanding the matter to the circuit court. Proceedings relative to retrial were commenced within the 180-day period after the Supreme Court's order of remand.

2. No error resulted from the trial court's questioning of witnesses at the hearing on the question of the victim's identification.

3. The trial court's determination that the pretrial identification procedures did not taint the in-court identification of the victim was not clearly erroneous.

4. The trial court's instructions to the jury on the use of the testimony of the expert witness did not result in error mandating reversal.

5. The testimony of the expert witness relative to hair sample analysis was properly admitted into evidence, since the testimony was to the effect that the hair samples found at the scene of the crime excluded at least 90% of the population.

6. It was not error to refuse to sequester the investigating officer during the testimony of the other witnesses.

Affirmed.

M. J. KELLY, P.J., wrote separately to amplify the fact that the effect of the hair sample analysis testimony was not to

increase the probability of defendants' guilt without connecting them with the crime but was rather to lend credibility to the testimony of the victim that she was raped in the back seat of defendant Wright's automobile. He would further note that there is a question, which need not be resolved because of a determination on the merits, of whether the prior denial of leave to appeal "on the merits" relative to the 180-day rule issue acts as the law of the case.

OPINION OF D. E. HOLBROOK, JR., J.

1. TRIAL — APPEAL — SPEEDY TRIAL.

A circuit court does not have jurisdiction to retry a case pursuant to an order by the Court of Appeals during the period the Supreme Court is considering an application for leave to appeal from the decision of the Court of Appeals; accordingly, the 180-day period in which the prosecution must proceed to trial against a prison inmate commences to run with respect to the retrial ordered by the Court of Appeals upon the Supreme Court's resolution of the application for leave to appeal (MCL 780.131; MSA 28.969[1]).

2. WITNESSES — TRIAL — JUDICIAL QUESTIONING.

A trial court may properly participate in the questioning of a witness, but, by doing so, the court must make sure to neither indicate partiality nor invade the role of the prosecutor.

3. APPEAL — CRIMINAL LAW — WITNESSES — IDENTIFICATION.

A trial court's determination as to whether there exists a basis for an in-court identification of a criminal defendant independent of the taint of an improper pretrial identification will not be set aside on appeal unless clearly erroneous (GCR 1963, 517.1).

4. CRIMINAL LAW — JURY INSTRUCTIONS — CRIMINAL JURY INSTRUCTIONS.

The use of the Michigan Criminal Jury Instructions, while encouraged, is not mandatory.

5. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Jury instructions must be reviewed on appeal in their entirety.

6. EVIDENCE — CRIMINAL LAW — SCIENTIFIC OPINION EVIDENCE.

The results of microscopic comparison of hair samples may be admitted as scientific opinion evidence in a criminal case where, in the opinion of the expert, at least 90% of the population was excluded by the analysis.

7. WITNESSES — SEQUESTERING OF WITNESSES — INVESTIGATING OFFICERS.

A request to sequester a witness, reasonably made, should not be denied; however, the sequestration of witnesses is a matter for the discretion of the trial court; it is not an abuse of discretion for a trial court to refuse to sequester the investigating police officer.

OPINION OF M. J. KELLY, P.J.

8. EVIDENCE — CRIMINAL LAW — SCIENTIFIC OPINION EVIDENCE — HAIR SAMPLE ANALYSIS.

Testimony of an expert witness that scientific tests revealed no significant difference between hairs found at the scene of a rape and hair samples from the rape victim and that the analysis would eliminate approximately 90% of the white population and 100% of the black population as the source of the hairs found at the scene of the crime is properly admitted into evidence, since such testimony only lends credibility to the victim's testimony that she was raped at that location and is not for the purpose of increasing the probability of the defendant's guilt without in any way connecting the defendant with the charged offense.

9. APPEAL — LAW OF THE CASE.

A prior ruling concerning the same question of law in the same case, generally, is the law of the case and is controlling; a legal issue raised in one appeal may not be raised in a subsequent appeal after proceedings held on remand to a lower court.

10. APPEAL — LEAVE TO APPEAL — LAW OF THE CASE.

Denials of applications for leave to appeal, generally, do not import an expression of opinion on the merits of a case, they being rather acts of judicial discretion; therefore, denials of applications for leave to appeal are generally not held to constitute rulings on the merits of a case.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Lenore M. Ferber,* Assistant Prosecuting Attorney, for the people.

*Michael W. Krellwitz,* for Michael Hayden.

*Habeeb Ghattas,* for Robert Wright.

D. E. HOLBROOK, JR., J. Defendants were convicted by a jury on November 15, 1979, of attempted murder, MCL 750.91; MSA 28.286, rape, MCL 750.520; MSA 28.788 (repealed by 1974 PA 266), and larceny from a person, MCL 750.357; MSA 28.589. Each defendant was sentenced on December 13, 1979, to prison terms of from 30 to 50 years for rape, life for attempted murder, and from 6 to 10 years for larceny from a person. The sentences were to run consecutively with 22- to 40-year sentences imposed following defendants' convictions at an earlier trial on another rape charge.

Defendants were originally tried by a jury in 1974 and found guilty on all three counts. Following their appeal this Court reversed the rape convictions and remanded for a new trial due to the trial court's failure to specifically instruct that rape required sexual penetration; the convictions on the other two counts were affirmed. *People v Wright,* 71 Mich App 40; 246 NW2d 422 (1976).

Prior to retrial on the rape charge, defendants sought dismissal of the charge, alleging that the 180-day rule, MCL 780.131; MSA 28.969(1), had been violated. The circuit court denied the request, and defendants sought leave to appeal to this Court and to the Supreme Court; however, both requests were denied. See *People v Wright* (Docket No. 77-4364, order of February 27, 1978, *lv den* 402 Mich 950m (1978).

Defendants also sought leave in the Supreme Court for review of the Court of Appeals affirmance of the attempted murder and larceny convictions. In lieu of granting leave, the Court reversed the attempted murder and larceny from a person convictions and remanded for a new trial

"because the pretrial identification procedures were unnecessarily suggestive and because the trial judge erred when he determined that the questions raised by the pretrial identification procedures were for the jury, rather than him, to decide". *People v Hayden,* 404 Mich 807; 280 NW2d 791 (1978).

Following defendants' second jury trial on all three charges, they were found guilty. Defendants appeal to this Court, raising five common issues:

First, that the trial court erred in refusing to dismiss the rape charge where more than 180 days had elapsed between the date of reversal of defendants' rape convictions by the Court of Appeals and the date of defendants' new trial.

Second, that the circuit judge abused his discretion by examining a witness at the *Wade*[1] hearing.

Third, that the circuit court erred in determining that there was an independent basis for the victim's in-court identification of the defendant.

Fourth, that the trial court's instructions to the jury were in error.

And, fifth, that the trial court committed reversible error by admitting, over objection, expert testimony regarding comparison of hair samples found in the back seat of defendant Wright's vehicle and hair samples of the victim.

Defendants argue that the 180-day period should have begun to run on the date the prior opinion of the Court of Appeals was released, September 7, 1976. Defendants' applications for leave to the Supreme Court were pending until December 29, 1978, when that Court reversed defendants' attempted murder and larceny convictions, due to pretrial identification procedures, and remanded to

---

[1] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

the circuit court for a new trial. See *People v Hayden,* 404 Mich 807 (1978). On February 20, 1979, the circuit court scheduled a new *Wade* hearing for the defendants.

In *People v George,* 399 Mich 638; 250 NW2d 491 (1977), the Court explained that, where leave to appeal is applied for in the Supreme Court from a decision of the Court of Appeals, the circuit court does not have jurisdiction to re-try the case until the application for leave to appeal is resolved. Since leave to appeal from the decision of the Court of Appeals had been applied for, the circuit court did not have jurisdiction to re-try defendants' case. Shortly after the Supreme Court's decision in the case, the circuit court began proceedings against defendants by scheduling a new *Wade* evidentiary hearing. This was within 180 days. Therefore, no violation of the 180-day rule occurred and the rape charges against the defendants should not have been dismissed.

During the *Wade* hearing, the judge questioned the victim. Defense counsel objected to the questioning. A judge has wide discretion and may properly participate in the questioning of a witness. *People v Hanna,* 85 Mich App 516, 520; 271 NW2d 299 (1978), *lv den* 406 Mich 893 (1979). One proper role of questioning by a judge is to clarify points and to elicit additional relevant information. *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975). The major concern over judicial examination is that the judge's questions might indicate some partiality to the jury and influence its verdict. See *Hanna, supra,* p 520; *Smith, supra,* p 267. It is when a case is being tried before a jury that a judge should avoid any invasion of the prosecutor's role. See *People v Cole,* 349 Mich 175, 196; 84 NW2d 711 (1957).

The instant hearing was not held before a jury. The judge questioning the victim was also the finder of fact. A review of the judge's questions reveals that the judge was clarifying points in eliciting additional relevant information. The judge did not, therefore, abuse his discretion in questioning at the *Wade* hearing. A new trial should not be granted on this issue.

With respect to defendants' third issue, the Supreme Court held that the pretrial identification procedures used in this case were unnecessarily suggestive and that the trial court had erred in determining that the questions raised by the procedures were for the jury rather than the judge to decide. *People v Hayden,* 404 Mich 807 (1978).

Pursuant to the decision of the Supreme Court, a new *Wade* hearing was held to determine whether the victim could make an in-court identification of the defendants that was independent of any taint from the pretrial identification.

In *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977), the Supreme Court developed seven factors which a court should use in determining whether an independent basis for an in-court identification exists. After the *Wade* hearing, the circuit court considered these factors and enunciated its findings on the record. The trial court's findings may not be set aside unless clearly erroneous. GCR 1963, 517.1. After our review of the court's consideration of the factors in *Kachar,* we do not find them to be clearly erroneous. Hence, we will not reverse on this issue.

As to defendants' claim that the trial court's instructions to the jury were erroneous, we note that during the charge to the jury the judge commented on the fact that an expert witness had testified at trial. The judge informed the jurors

that they were not bound to follow the expert's opinion, they should scrutinize the opinion, and they were to judge the expert in the same way they judge every other witness. It does not appear that the judge implied to the jury that more weight should be given the opinion of the expert than the other witnesses.

Although use of the Michigan Criminal Jury Instructions is encouraged, they are not mandatory. *People v Turner,* 86 Mich App 177, 182; 272 NW2d 346 (1978), *vacated on other grounds* 407 Mich 890 (1979). Jury instructions must be reviewed in their entirety. *People v Finley,* 38 Mich 482, 486 (1878); *People v Ritsema,* 105 Mich App 602, 609; 307 NW2d 380 (1981). Our review of the judge's instructions relative to the expert witness does not to us reveal error mandating reversal.

Concerning defendants' fifth allegation of error, we find that at trial the prosecutor offered to introduce testimony concerning the comparison of the microscopic analysis of two strands of hair found in the back seat of defendant Wright's car with that of hair samples taken from the head and pubic area of the victim. Defense counsel objected, citing the case of *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979), for the proposition that a similar type of analysis done with blood samples was held to be inadmissible. The trial court allowed the hair analysis to be admitted.

This Court has previously addressed the issue of the admissibility of hair sample analysis. In each case, microscopic analysis of hair samples has been held to be admissible. *People v Collins,* 43 Mich App 259, 266; 204 NW2d 290 (1972), *lv den* 391 Mich 798 (1974); *People v Watkins,* 78 Mich App 89, 96; 259 NW2d 381 (1977), *lv den* 406 Mich 954 (1979); *People v Browning,* 106 Mich App 516, 524-

525; 308 NW2d 264 (1981). One Supreme Court justice, however, has expressed concern over the admissibility of such evidence. In *People v Watkins,* 406 Mich 954 (1979) (order denying leave to appeal, LEVIN, J., *dissenting),* concern was expressed that the expert witness had failed to give "probabilities or percentages" on what portion of the population could be included in the hair group. In the instant case, however, the expert testified that at least 90% of the population was excluded by his analysis. This testimony should satisfy the concern expressed in *Watkins.* Thus, no error is found in the trial court's admission of such testimony.

Lastly, defendant Wright claims that the trial court erred in denying his motion to sequester the investigating officer.

A request to sequester a witness, reasonably made, should not be denied. *People v Hall,* 48 Mich 482, 487; 12 NW 665 (1882); accord *People v Martin,* 386 Mich 407, 424; 192 NW2d 215 (1971). However, the sequestration of witnesses is a matter for the discretion of the trial court. *Martin, supra,* p 424.

In *People v Burns,* 67 Mich 537; 35 NW 154 (1887), a case closely on point, the defendant had requested the sequestration of the arresting officer while the other witnesses were being examined. The Supreme Court held that the matter was entirely within the discretion of the trial court and found no error in the trial court's refusal to sequester the officer nor in its allowing the officer to sit next to the prosecutor during trial. Accord *People v Buero,* 59 Mich App 670, 682; 229 NW2d 880 (1975).

Given the Supreme Court's holding in *Burns,* it does not appear that the trial court abused its discretion in refusing the request.

Affirmed.

N. J. KAUFMAN, J., concurred.

M. J. KELLY, P.J. *(concurring).* I concur with my brother HOLBROOK's opinion in the affirmance of defendants' convictions. I write separately, however, to elaborate on two points.

I

Certain pertinent facts are necessary to an understanding of the propriety of the admission of hair sample evidence in the instant case. Rosemary Smith, a white woman, testified that she was raped and battered in the back seat of a car by two black men. After the arrest of the two defendants, an automobile belonging to defendant Wright was taken into custody pursuant to a search warrant. Although the interior of the car was found to be "very clean" by a state police criminologist, a number of hairs were found on the floor in front of the car's rear seat. These hairs were turned over to Michigan State Police chemist Curtis Flunker. Flunker compared samples of Rosemary Smith's head hair, pubic hair, and blood.

Upon examining the hairs which came from the rear seat of defendants' car, Flunker eliminated animal hairs and hair of Negro origin. Flunker was left with a long head hair and a short pubic hair. These two hairs were very similar to the samples obtained from Rosemary Smith.

A number of tests were performed on the hair known to be from Ms. Smith and on the hair from the back seat floor of defendant Wright's car. These tests included measurements of length and diameter and comparisons of color, root structure, ends, cuticles, medulla content, and twist. Included

in the tests was a determination of the blood type of the unknown hairs. These were found to be blood type A. The blood taken from Rosemary Smith was also blood type A.

Although chemist Flunker found no significant differences between the unknown hair and the hair of Rosemary Smith, he testified he could not say for certain that the unknown hairs came from Rosemary Smith. Rather, he stated that his tests would eliminate "approximately 90% of the white population and nearly 100% of the black population" from having been the source of the unknown hairs.

In *People v Sturdivant,* 91 Mich App 128, 131; 283 NW2d 669 (1979), *lv den* 407 Mich 933 (1979), we found error in blood-type evidence being used to include a defendant in a class of possible assailants, which included 20% of the population, because "it thereby increased the probability of defendant's guilt without connecting him, in any way, to the charged offense". Thus, we held "that blood type evidence, when used solely for the purpose of including a defendant in a class of possible defendants, has no probative value". *Sturdivant, supra,* p 134.

The instant case differs significantly from *Sturdivant.* Here, scientific analysis was not used to place the defendant in a large group of possible assailants. Rather, the analysis placed the victim in a small portion of the population which could have been the source of both head and pubic hairs which were found in the back seat of defendant Wright's car. The hair sample analysis only lends credibility to the victim's testimony that she was raped in the back seat of defendant Wright's car. Since the analyzed hair came from the victim rather than one of the defendants, the analysis did

not "increase the probability of defendant's guilt without connecting him, in any way, to the charged offense". It was not error, therefore, for testimony concerning the hair analysis to be admitted into evidence.

## II

On appeal, the prosecutor argues that this Court should not address defendants' 180-day-rule argument since, in the prosecutor's view, a previous ruling by this Court concerning the issue amounts to the law of the case. The 180-day-rule argument was previously before this Court in the form of an application for leave to appeal. The application was denied "for lack of merit". *People v Wright,* Docket No. 77-4364, order of February 27, 1978, *lv den* 402 Mich 950m (1978).

Generally, a prior ruling concerning the same question of law in the same case is the law of the case and is controlling. *People v Conte,* 104 Mich App 73, 76; 304 NW2d 485 (1981). A legal issue raised in one appeal may not be raised in a subsequent appeal after proceedings held on remand to a lower court. *Conte, supra,* p 76. The instant order, however, was a denial of leave to appeal. Generally, denials of applications for leave to appeal do not import an expression of opinion on the merits of a cause, but rather are acts of judicial discretion. *Malooly v York Heating & Ventilating Corp,* 270 Mich 240, 247; 258 NW 622 (1935); *People v Berry,* 10 Mich App 469, 473-474; 157 NW2d 310 (1968). Thus, denials of applications for leave to appeal have been held not to constitute rulings on the merits of a case. *People v Hines,* 88 Mich App 148, 152; 276 NW2d 550 (1979), *lv den* 406 Mich 934 (1979).

In the instant case, however, this Court did not

deny leave without considering the merits of the case. While denials of leave are generally for "failure to persuade the Court of the need for immediate appellate review", the order in the instant case denied leave expressly "for lack of merit". Thus, the Court was expressing a decision on the merits on the 180-day issue when it denied defendants' application for leave to appeal.

Judge HOLBROOK's opinion, however, does address the merits of defendants' 180-day-rule argument. It is clear, therefore, that the law-of-the-case doctrine is not being applied in the instant case. Since defendants' claim is being denied on the merits of defendants' arguments, no prejudice has resulted to either party by the Court's decision not to apply the law-of-the-case doctrine. Thus, we leave for future decision what weight should be accorded a denial of leave "for lack of merit".

D. E. HOLBROOK, JR., and N. J. KAUFMAN, JJ., concurred.