PEOPLE v WATKINS

1. WITNESSES—CRIMINAL LAW—IMMUNITY—PROSECUTOR'S DISCRETION —TRIAL JUDGE'S DISCRETION—STATUTES.

A prosecuting attorney is vested with discretionary authority to petition for the granting of immunity for a witness in a criminal case; once such a petition is filed, the trial judge possesses discretionary authority and may issue an order granting immunity only if satisfied that such order shall serve the interests of justice (MCLA 780.701; MSA 28.1287[101]).

2. WITNESSES—CRIMINAL LAW—IMMUNITY—STATUTES.

An immunity statute is for the benefit of the prosecution and an accused cannot invoke the statute to compel a witness to testify (MCLA 780.701; MSA 28.1287[101]).

3. WITNESSES—CRIMINAL LAW—IMMUNITY—OPPORTUNITY TO PRESENT EVIDENCE—APPEAL AND ERROR.

A trial judge's refusal to grant an order of immunity for a witness upon a defendant's request in a criminal case did not result in prejudice to the defendant where the defendant was not denied an opportunity to offer any material evidence because the testimony of the witness, had he testified, would not have covered a material fact likely to have affected the outcome of the case.

4. EVIDENCE—CRIMINAL LAW—SCIENTIFIC OPINION EVIDENCE—ADMISSIBILITY—STANDARD FOR ADMISSIBILITY—APPEAL AND ERROR.

The standard for the admissibility of scientific opinion evidence based upon analysis or tests is that such analysis or test must have gained recognition and acceptance in its particular field; microscopic comparison of hair samples satisfies this standard and, therefore, it was not error for a trial judge in a criminal case to allow testimony based on such tests.

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 57.
[2] 81 Am Jur 2d, Witnesses § 56.
[3] 75 Am Jur 2d, Trial § 124 et seq.
  81 Am Jur 2d, Witnesses § 54 et seq.
[4] 31 Am Jur 2d, Expert and Opinion Evidence § 129.

Appeal from Recorder's Court of Detroit, Susan D. Borman, J. Submitted June 9, 1977, at Lansing. (Docket No. 29355.) Decided September 7, 1977.

Ledura Watkins was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *William T. Morris,* Assistant Prosecuting Attorney, for the people.

*Robert M. Cohn,* for defendant on appeal.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

A. E. KEYES, J. Defendant appeals his March 16, 1976, jury conviction of first-degree murder, MCLA 750.316; MSA 28.548.

On April 16, 1976, he was sentenced to life imprisonment.

At trial, a key prosecution witness and alleged accomplice, Travis Herndon, was granted immunity in return for his testimony. His testimony contained a detailed account of the activities of the defendant and said witness on the date of the murder, including, *inter alia,* the planning and preparation in advance thereof, the manner in which the victim, Yvette Ingram, was executed by close range gunshot, the robbery of drugs, money and jewelry from the victim's premises, and the subsequent disposition of certain of the victim's rings, herein mentioned because Herndon's account of the disposition of the rings provides the groundwork for one of the defendant's assignments

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of error. Herndon testified that he initially gave one of the stolen rings to defendant, retained the other two rings, later pawned one of the two rings remaining in his possession to a pawnbroker, and that he gave the final ring in his possession to the defendant. Under cross-examination Herndon testified that he did not believe that he knew one Michael Miller and that he was certain that he had never sold anything to Miller.

Defendant sought to call Michael Miller as a defense witness; however, upon advice of counsel, Miller refused to testify. Allegedly, his testimony would have been to the effect that he purchased one of the victim's rings from Herndon, which would have been contradictory to Herndon's testimony. When confronted with Miller's refusal to testify, defense counsel sought a grant of immunity for this defense witness from the prosecuting attorney, which was refused. The trial judge found no error in such refusal on the part of the prosecutor. Miller did not testify.

Defendant claims the trial court erred in refusing to order a grant of immunity for Michael Miller, a prospective witness for defendant.

The statutory basis for granting of immunity in a criminal prosecution is MCLA 780.701; MSA 28.1287(101), which provides:

"In any case of a felony or a circuit court misdemeanor the prosecuting attorney may apply at the preliminary examination to the circuit court for the county in which the offense was committed or at the trial to the trial judge for an order granting immunity to any person within the state, designated by name and address in the application, who might give testimony concerning the violation charged in the complaint and warrant. The application shall be accompanied by a verified petition of the prosecuting attorney setting forth the facts upon which the application is based. If

the judge to whom the application is presented is satisfied that it is in the interest of justice that such immunity be granted, he shall enter an order granting immunity to the witness if the witness appears before any court in a criminal proceeding and testifies under oath concerning any matter or thing of which the witness has knowledge concerning matters charged in the complaint and warrant, as set forth in the petition of the prosecuting attorney."

The language of this statute makes it clear that the prosecuting attorney is vested with discretionary authority to petition for the granting of immunity for a witness in a criminal proceeding. Once the petition is filed, the judge likewise possesses discretionary authority and may issue the order granting immunity only if satisfied that such order shall serve the interests of justice.

Defendant asserts that because prospective witness Miller was not granted immunity from prosecution he refused to testify, and that as a result defendant was denied due process of law by the abrogation of his right to compulsory process. Further, defendant argues that the right to compulsory process is a fundamental element of due process of law, applicable to the states through the Fourteenth Amendment.

In support of this position, defendant cites *Washington v Texas,* 388 US 14, 19; 87 S Ct 1920, 1923; 18 L Ed 2d 1019, 1023 (1967):

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own wit-

nesses to establish a defense. This right is a fundamental element of due process of law."

The application of the above cited statute to other than prosecution witnesses appears to be a question of first impression in the Michigan courts. There is, however, authority from other jurisdictions.

It has been held that immunity statutes are ordinarily for the benefit of the prosecution, and an accused cannot invoke the statute to compel a witness to testify. *State v Perry,* 246 Iowa 861, 871; 69 NW2d 412, 418 (1955):

"We believe these statutes relate to the considered judgment of the State to grant immunity from prosecution in return for desired evidence, and in that view we are supported by history, reason and ample authority from other jurisdictions. Unless one claims his privilege under the statute, any testimony he may give may be used against him. When he claims his privilege, it is as to such excepted testimony an offer to testify if he be granted immunity from prosecution. A defendant could grant no such immunity, nor should he be able to do so to the end that many serious law violators may escape prosecution."

*State v McCown,* 189 Neb 495; 203 NW2d 445 (1973), held that historically immunity has been a governmental investigative tool for offenses which could not be investigated or proved otherwise, and held that immunity is solely a governmental prerogative.

*Hebel v State,* 60 Wis 2d 325; 210 NW2d 695 (1973), stands for the principle that a grant of immunity can only be made on the motion of the district attorney. It was held that an accused could not invoke the statutory provision to compel a witness to testify in his own behalf. There was also

held to be no reasonable relationship between the immunity power of the prosecutor and his duty not to conceal exculpatory evidence.

*United States v Ernest,* 280 F 515 (D Mont, 1922), dealt with grants of immunity provided under the National Prohibition Act. It was held that such immunity was available only to the prosecution and that to grant immunity on defendant's behalf would defeat the object of immunity, *i.e.,* prevention of use of intoxicating liquor for beverage purposes. In an effort to demonstrate the dilemma that could arise by granting defendants in criminal cases the authority to grant immunity to witnesses, *Ernest* illustrates the point as follows:

"A. & B., jointly accused and tried, each could refrain from testifying for himself, but could subpoena and call the other, both testify as witnesses only, and the case would end in dismissal as to both, a judicial farce. Or of six involved, one known, accused, and tried could subpoena and call all the others, and confer upon them an immunity bath." *Id.* at 517.

Whether or not to grant immunity in a particular case has been held to be within the discretion of the prosecuting attorney. *People v Traylor,* 23 Cal App 3d 323; 100 Cal Rptr 116 (1972). The court held that it was a legislative function to determine who should be granted immunity, that the Legislature had left the question to the discretion of the prosecuting attorney and the court would not upset that legislative determination.

Also see 3 Wharton's Criminal Evidence (11th ed), § 1131, p 1968, which states:

"The protection granted by immunity statutes ex-

tends only to witnesses called and used by the prosecution, and does not apply to witnesses for the defense."

It is the opinion of this Court based upon the plain language of MCLA 780.701; MSA 28.1287(101) and the light shed from the decisions reviewed from other jurisdictions, that only the prosecuting attorney is vested with discretionary authority to seek a grant of immunity in a criminal case.

Although we have before us only a representation as to what witness Miller's testimony may have been had he testified, this Court agrees with the trial judge in her analysis of this issue; defendant simply was not denied an opportunity to offer any material evidence, and hence no prejudice resulted to the defendant for that reason. Had Miller testified, his testimony would not have covered a material fact likely to have affected the outcome of this case, provided that the testimony would have been only that projected by defense counsel.

Defendant's second claim of error is that the trial court erred in admitting testimony regarding microscopic comparison of hair samples.

An expert witness testified that a comparison of hair found upon the pants of the victim with a known sample of hair taken from defendant matched in 15 points of comparison. Testimony indicated that if any one of the 15 points failed to match, a conclusion of dissimilarity would be reached. The technique used by the expert was microscopic analysis and not neutron analysis.

The expert witness concluded that the one hair taken from the victim's pants was microscopically similar and could have a common origin with defendant.

The standard for admissibility of scientific opinion evidence based upon analysis or tests is that such analysis or test must have gained recognition and acceptance in its particular field. *Frye v United States,* 54 App DC 46; 293 F 1013 (1923). In the case at bar testimony was offered to indicate the general scientific recognition of microscopic analysis of hair.

This Court faced the issue of admissibility of expert testimony based on a microscopic analysis of hair samples in *People v Collins,* 43 Mich App 259, 266; 204 NW2d 290 (1972), *lv den,* 391 Mich 798 (1974). This Court stated:

"There is testimony to the effect that the inability to identify hair samples by microscopic analysis is universally recognized, but the same witness who gave that testimony stated after microscopic analysis that the hair from the pants was not the same as the hair from the Leik basement floor. We conclude, as did the trial court, that defendant's objection to the Holz testimony went to its weight rather than to its admissibility, and error in its admission is not established."

It is the opinion of this Court in the case at bar, that the trial court did not err in admitting this testimony. The testimony satisfied the test for admissibility of scientific opinion testimony. What was involved was a question of weight and not admissibility.

Defendant's claim of error is without merit.

Affirmed.