PEOPLE v SCHMIDT

Docket No. 118060. Submitted January 4, 1990, at Lansing. Decided
    May 22, 1990.

The Attorney General charged Elmer R. Schmidt with two counts
    of filing a false or fraudulent tax return with intent to defraud
    under a provision of the act dealing with the operation of the
    revenue division of the Department of Treasury which makes
    such an act a felony. Defendant was bound over to St. Clair
    Circuit Court following a preliminary examination. Defendant
    moved in circuit court to quash the information and to confer
    upon his accountant immunity from prosecution so that the
    accountant could be required to testify on defendant's behalf.
    The trial court, Ernest F. Oppliger, J., denied the motions to
    quash and to grant immunity to the defense witness. Defendant
    sought leave to appeal to the Court of Appeals, which was
    denied. Defendant sought leave to appeal to the Supreme
    Court, which, in lieu of granting leave, remanded to the Court
    of Appeals. 432 Mich 911 (1989).

    The Court of Appeals held:

    1. The Legislature evidenced a clear intent that the provision
    in the act dealing with the operation of the revenue division
    which makes the filing of a false or fraudulent tax return with
    intent to defraud a felony was to supersede the similar re-
    pealed provision in the Use Tax Act which had made such a
    filing of a use tax return a misdemeanor. Further, it was not an
    abuse of discretion to charge defendant under the felony provi-
    sion in the revenue division act rather than under a Use Tax
    Act provision making the filing of a false use tax return a
    misdemeanor, since these two provisions involve separate
    crimes because the felony provision requires the proof of an
    additional element: the intent to defraud.

    2. The Michigan statutory scheme requires that a criminal
    defendant wishing immunity for a defense witness may secure

REFERENCES

Am Jur 2d, Criminal Law § 211; State and Local Taxation §§ 589,
    606, 607, 865.

Right of defendant in criminal proceeding to have immunity from
    prosecution granted to defense witness. 4 ALR4th 617.

such immunity by having the prosecution request the order granting immunity. The question whether a request for immunity for a defense witness will be made is addressed to the prosecution's discretion. Defendant has a due process right to demand immunity for the witness only where the denial by the prosecution of the request for immunity is the result of prosecutorial misconduct. No such misconduct was pled or shown here.

Affirmed.

MacKENZIE, J., concurred in the holding that defendant was properly charged and that he was not entitled to the benefit of use immunity for his witness.

1. TAXATION — USE TAXES — CRIMINAL LAW — FRAUDULENT TAX RETURNS.

It was the intent of the Legislature, in enacting the present statutory scheme relative to the general operation of the revenue division of the Department of Treasury, to make the failure or refusal to make a tax return or the making of a false or fraudulent tax return with the intent to defraud or to avoid payment of the same a felony and to have that general criminal sanction for a filing made with intent to defraud supersede the repealed provision in the Use Tax Act which had made the filing of a false use tax return with intent to defraud a misdemeanor; it is not an abuse of discretion for a prosecutor, where the proofs warrant it, to charge a defendant with the felony of filing a false tax return with intent to defraud rather than with the misdemeanor of filing a false use tax return, since the former is clearly a different crime from the latter because it requires proof of the additional element of intent to defraud (MCL 205.27, 205.108; MSA 7.657[27], 7.555[18]).

2. WITNESSES — IMMUNITY FROM PROSECUTION — DEFENSE REQUESTS FOR IMMUNITY — PROSECUTING ATTORNEYS.

A criminal defendant who wishes to secure the testimony of a witness who, if placed on the stand, would refuse to testify on the basis of the right against self-incrimination must ask the prosecutor to seek immunity for the witness; the decision to seek immunity rests with the prosecutor; a defendant's due process rights require the granting of immunity for defendant's witnesses in the absence of a prosecutor's request only where the prosecutor's refusal to request immunity is the result of prosecutorial misconduct (MCL 780.701, 780.702; MSA 28.1287[101], 28.1287[102]).

*Frank J. Kelley,* Attorney General, and *E. David*

*Brockman* and *Paul L. Bricker,* Assistant Attorneys General, for the people.

*David F. DuMouchel, P.C.* (by *David F. DuMouchel* and *Cynthia J. H. Oberg*), for defendant.

Before: MARILYN KELLY, P.J., and GILLIS and MACKENZIE, JJ.

PER CURIAM. Defendant filed an application for leave to appeal from the circuit court's order denying his motion to quash and his motion to effect his right to compulsory process by conferring immunity upon a defense witness. This Court denied defendant's request. On appeal, our Supreme Court remanded this case to us to consider as on leave granted. *People v Schmidt,* 432 Mich 911; 444 NW2d 114 (1989). We affirm.

Defendant first claims that the charges against him must be dismissed or reduced to misdemeanors. Defendant was charged with violating MCL 205.27(1)(a) and (2); MSA 7.657(27)(1)(a) and (2), failing to pay a use tax with intent to defraud or to evade the payment of the same. Defendant contends that when the Legislature enacted that provision in 1980 and also repealed MCL 205.107; MSA 7.555(17) it intended to leave intact only the misdemeanor penalties provided in MCL 205.108; MSA 7.555(18) for a consumer's failure to pay a use tax.

In 1979, MCL 205.107; MSA 7.555(17), which was part of the Use Tax Act, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.,* provided in part:

> Any person who fails or refuses to make any return required under this act or who makes any false or fraudulent return or false statement in any return, with intent to defraud the state or evade payment of the tax or any part thereof

imposed by this act, or who aids or abets another in any attempt to evade the payment of the tax or any part thereof as imposed by this act, or any person or president, vice-president, secretary or treasurer of any company or association who makes or permits to be made for any person, company or association any false return or any false statement in any return required in this act, with the intent to evade or assist in evading the payment of any tax hereunder, shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined not less than $500.00 nor more than $5,000.00 or imprisoned in the county jail not more than 1 year, or by both such fine and imprisonment in the discretion of the court.

At that time, MCL 205.108; MSA 7.555(18) provided and still provides:

Any consumer who refuses to pay the tax as required by this act, or refuses to comply with the provisions of this act, or makes to the seller a false statement or certificate indicating that the storage, use, or consumption is not subject to the tax herein imposed, shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $500.00 nor more than $5,000.00, or imprisoned in the county jail not more than 1 year, or by both such fine and imprisonment in the discretion of the court.

1980 PA 165, § 2 repealed MCL 205.107; MSA 7.555(17) conditionally on the approval of 1980 PA 162. The latter became effective on September 17, 1980, and added MCL 205.27; MSA 7.657(27) to the section of the taxation acts which deals with the revenue division of the Department of Treasury. MCL 205.27; MSA 7.657(27) provides:

(1) In the performance of the duties and responsibilities required by a statute, the administration of which is subject to this act, a person shall not:

(a) Fail or refuse to make a return within the time specified or make a false or fraudulent return or false statement in a return.

(b) Aid, abet, or assist another in an attempt to evade the payment of a tax, or a part of a tax, or file a false claim for credit as provided in statutes administered under this act.

(c) Make or permit to be made for himself or herself or for any other person a false return or false statement in a return, or a false claim for credit or refund, either in whole or in part.

(2) A person who violates a provision of this section with intent to defraud or to evade or assist in defrauding or evading the payment of a tax, or a part of a tax, is guilty of a felony, punishable by a fine of not more than $5,000.00, or imprisonment for not more than 5 years, or both.

* * *

(4) A person who is not in violation pursuant to subsection (2), but who knowingly violates any other provision of this act, or of any statute administered under this act, is guilty of a misdemeanor, punishable by a fine of not more than $1,000.00, or imprisonment for not more than 1 year, or both.

Various other tax provisions, including penalty provisions, were also repealed conditionally upon the approval of 1980 PA 162.

1980 PA 162, § 1 also added MCL 205.20; MSA 7.657(20), which at that time provided:

Unless otherwise provided by specific authority in a taxing statute administered by the department, all taxes shall be subject to the procedures of administration, audit, assessment, interest, penalty, and appeal provided in sections 21 to 30.

MCL 205.100(1); MSA 7.555(10)(1) also provided:

The tax imposed by this act [the Use Tax Act]

shall be administered by the revenue commissioner under Act No. 122 of the Public Acts of 1941, as amended, being sections 205.1 to 205.19 of the Michigan Compiled Laws and this act. In case of conflict between Act No. 122 of the Public Acts of 1941, as amended, and this act, the provisions of this act shall apply.

We note that 1988 PA 376, § 1 amended MCL 205.100(1); MSA 7.555(10)(1) so that it reads 205.31 rather than 205.19.

As noted above, defendant argues that the Legislature intended to punish Use Tax Act violations as misdemeanors because it retained MCL 205.108; MSA 7.555(18) and provided that in case of a conflict between a provision in the portion of the tax code dealing with the revenue division and a provision in the portion dealing with the use tax, the latter controls, MCL 205.100(1); MSA 7.555(10) (1). We note that the alleged conflict arises because MCL 205.108; MSA 7.555(18) states that the consumer's refusal to comply with the provisions of the Use Tax Act is a misdemeanor. MCL 205.96(1); MSA 7.555(6)(1) requires a person to file a return when the use tax is not paid by the seller. On the other hand, MCL 205.27(1)(a) and (2); MSA 7.657(27)(1)(a) and (2) punishes the failure or refusal to make a return required under the various tax acts with the intent to defraud or evade payment of a tax. Defendant argues that these provisions conflict and, therefore, MCL 205.108; MSA 7.555(18) controls. MCL 205.100(1); MSA 7.555(10) (1).

We disagree. We believe that the Legislature intended to consolidate procedures for enforcement of the various tax acts when it passed 1980 PA 162, given that 1980 PA 165, § 2, which provided for the repeal of MCL 205.107; MSA 7.555(17), was to be effective only if the former act was enacted.

Hence, we believe that MCL 205.27(1)(a) and (2); MSA 7.657(27)(1)(a) and (2) replaced the repealed MCL 205.107; MSA 7.555(17). We fail to see a conflict between MCL 205.27(1)(a) and (2); MSA 7.657(27)(1)(a) and (2) and MCL 205.108; MSA 7.555(18), especially where the former contains the additional requirement of an intent to defraud or to evade payment of the tax. See, e.g., *People v Ford*, 417 Mich 66; 331 NW2d 878 (1982); *People v Sanford*, 402 Mich 460; 265 NW2d 1 (1978).

Defendant also claims that the Department of Treasury still views violations of the Use Tax Act as misdemeanors, citing 1979 AC, R 205.27(g), which states that any consumer who fails to pay the tax is subject to a fine of not less than $500 nor more than $5,000, or imprisonment for a year or both, and the "Michigan Declaration of Use Tax" form, which states on its reverse side that any consumer who refuses to pay the full use tax is guilty of a misdemeanor punishable by a fine of not less than $500 or more than $5,000, or imprisonment for not more than one year, or both, citing 1937 PA 94, § 18, as amended. Defendant cites *Chocola v Dep't of Treasury*, 422 Mich 229; 369 NW2d 843 (1985), for the proposition that the department's interpretation of a statute through its rules is binding.

We disagree. We note that the department's rule predates the enactment of MCL 205.27; MSA 7.657(27). In addition, the Michigan Declaration of Use Tax form properly references MCL 205.108; MSA 7.555(18). As noted above, we believe that the Legislature's intent in enacting MCL 205.27; MSA 7.657(27) was clear and we believe that it is that intent which controls.

Defendant also claims that the prosecution abused its discretion by charging him under MCL 205.27(1)(a) and (2); MSA 7.657(27)(1)(a) and (2), the

general statute, rather than MCL 205.108; MSA 7.555(18), the specific statute, where the department's regulation and the Michigan Declaration of Use Tax form indicate that the failure to pay the use tax is a misdemeanor. Defendant further argues that the rule of lenity applies.

Having rejected defendant's claims as to the regulation and the form, we note that where a defendant may be charged under two statutes, one general and the other specific, the prosecutor has discretion to charge under either statute if the statutes prohibit different crimes (i.e., an additional element is required to convict the defendant of one of the crimes, but not the other). *Ford, supra; Sanford, supra.* As noted above, this is precisely the case here. Hence, the circuit court did not abuse its discretion when it denied defendant's motion to quash or to reduce the charges.

We now turn to defendant's second issue. At trial, defendant wanted to call his accountant as a witness to testify that he designed the transactions to avoid the payment of the sales tax, without intent to evade the use tax, and that defendant fully relied on his advice. However, at the preliminary examination, the witness invoked his Fifth Amendment right against self-incrimination, and the Attorney General refused to grant him immunity. Therefore, defendant filed a motion to have the court confer immunity upon his accountant on the ground that failure to immunize him would deprive defendant of his constitutional right to due process to compel witnesses to testify on his behalf and to present a defense.

In this state, when a witness refuses to testify, claiming his right against self-incrimination, the prosecuting attorney may petition the court for an order granting the witness transactional immunity and, thereby, obtain the witness' testimony. MCL

780.701, 780.702; MSA 28.1287(101), 28.1287(102). On the other hand, a defendant who wants to obtain such a witness' testimony in his defense must ask the prosecutor to seek immunity for the witness and the prosecutor may decline to do so. Moreover, a defendant may not call a witness for the purpose of having that witness invoke his Fifth Amendment right. *People v Dyer,* 425 Mich 572; 390 NW2d 645 (1986).

In *People v Watkins,* 78 Mich App 89; 259 NW2d 381 (1977), lv den 406 Mich 954 (1979), the defendant sought immunity for a witness who had invoked his right against self-incrimination, and the prosecutor refused to seek it. The defendant then asked the trial court to grant immunity for the witness, claiming that he would be denied due process of law by abrogation of his right to compulsory process. The witness' testimony allegedly would have impeached the credibility of an accomplice's testimony where that accomplice had been given immunity. This Court held that the decision to seek immunity was reserved to the prosecutor. This Court then noted that the defendant was not denied an opportunity to offer any material evidence.

In *People v Iaconnelli,* 112 Mich App 725, 759; 317 NW2d 540 (1982), lv den sub nom *People v Haslip,* 417 Mich 1045 (1983), this Court noted the holding in *Watkins* but went on to state that federal cases had found that a prosecutor's failure to seek immunity may result in a denial of due process. This Court then stated:

> Under these cases, due process requires that a defendant be entitled to the benefit of immunity for witnesses in two types of cases: first, where prosecutorial misconduct results in the suppression of testimony favorable to the defendant (as in

[*United States* v] *Morrision,* [535 F2d 223 (CA 3, 1976)] where the prosecutor successfully intimidated a key defense witness), and, second, where a defendant makes a substantial evidentiary showing that a grant of immunity is necessary in order to obtain exculpatory testimony that is important to the defendant's case.

This Court noted that the rationale behind both rules was to prevent the prosecutor from deliberately distorting the truth-finding process. This Court then held that there was no justification for providing the defendants' witnesses with immunity. *Id.* at 759-762. *Iaconnelli* was followed in *People v Julian,* 171 Mich App 153, 159-160; 429 NW2d 615 (1988).

We note that in *Iaconnelli* this Court failed to discuss the fact that the federal statute provides for use immunity, 18 USC 6002, rather than transactional immunity. Transactional immunity is a complete bar to prosecution for the offense to which the grant of immunity relates, while use immunity allows a witness to be prosecuted for the offense to which the compelled testimony relates, but only if the prosecution shows that the evidence used against that witness was derived from a legitimate source, wholly independent of the compelled testimony. *People v Reddy,* 168 Mich App 410, 413; 425 NW2d 163 (1988).

On appeal, defendant claims that the circuit court should have granted his accountant use immunity. In this case, defendant did not claim prosecutorial misconduct below. Instead, he argued that a grant of immunity was essential to obtain exculpatory evidence. The exculpatory evidence portion of the rule as stated in *Iaconnelli* appears to have been derived from *United States v Herman,* 589 F2d 1191 (CA 3, 1978), cert den 441 US 913; 99 S Ct 2014; 60 L Ed 2d 386 (1979), and

*Government of the Virgin Islands v Smith,* 615
F2d 964 (CA 3, 1980).

In *Herman,* the prosecutor failed to immunize
two defense witnesses even though two prosecution
witnesses had been granted immunity. The court
rejected the defendant's claim that this procedure
violated his Sixth Amendment right to compulsory
process, noting that a defendant takes a witness as
he finds him and, therefore, absent prosecutorial
threats or intimidation depriving the defendant of
the witness' testimony, no violation occurred. The
court then noted that courts could review a prose-
cutor's decision to deny limited use immunity to
defense witnesses while granting it to prosecution
witnesses to determine if a defendant's due process
rights were violated. In such a case, the defendant
had to show that the prosecutor's decision was
made with the deliberate intention to distort the
judicial fact-finding process. Once such a showing
is made, the court would have power to require
the distortion to be redressed by the prosecution
granting immunity to the defendant's witnesses as
an alternative to dismissal. The court held that
the prosecutor's decision to immunize his wit-
nesses was unrelated to his decision to charge and
later dismiss without prejudice the charges against
the defendant's proposed witnesses before defen-
dant's trial where the statute of limitations had
not expired.

The court then suggested that a court might
have inherent authority to confer a judicially-fash-
ioned immunity upon a defense witness to effectu-
ate defendant's right to compulsory process where
the witness' testimony was essential to an effective
defense, but noted that it need not decide that
issue because it had not been raised. 589 F2d 1204-
1205.

In *Smith,* the defendants sought the exculpatory

testimony of a juvenile under the control of the Virgin Islands Attorney General. That Attorney General agreed to grant immunity upon the approval of the United States Attorney as a courtesy. The United States Attorney declined without reason. The court found that the defendants had made a substantial showing that the United States Attorney's denial was made for strategic advantage and remanded for a hearing on whether it was made with the deliberate intention of distorting the judicial fact-finding process given the United States Attorney's lack of jurisdiction over the juvenile witness.

The court then went on to discuss the inherent immunity alluded to in *Herman. Smith, supra,* 615 F2d 969. The court noted that this judicial immunity was not triggered by prosecutorial misconduct or intentional distortion of the trial process, but instead depended on the fact that the defendant was prevented from presenting exculpatory evidence crucial to his case where no strong countervailing systemic interest justified its exclusion. Noting the separation of powers involved, the court held that (1) immunity must be sought in the district court, (2) the defense witness must be available to testify, (3) the proffered testimony must be clearly exculpatory, (4) the testimony must be essential, and (5) there must be no strong governmental interests which weigh against a grant of immunity. Judicial immunity was to be denied if the proffered testimony was ambiguous, not clearly exculpatory, cumulative or was found to relate only to the credibility of the government's testimony. *Id.* at 972.

The court then noted that the government had a legitimate interest in prosecuting the witness whom defendant sought to have immunized. Nonetheless, the court stated that a balance could be

achieved between a defendant's right to a fair trial and the government's interest in prosecuting the witness because use immunity was "virtually costless to the government." *Id.* at 973. The court noted that the prosecution may have already gathered the evidence necessary to try the witness or could postpone defendant's trial while it completed its investigation of the witness. The court then remanded for a hearing on whether judicial immunity was required to vindicate the defendants' right to a fair trial.

In *United States v Turkish,* 623 F2d 769 (CA 2, 1980), cert den 449 US 1077; 101 S Ct 856; 66 L Ed 2d 800 (1981), the court agreed with the ultimate decision in *Smith,* but disagreed with its rationale. The court noted that, while use immunity allows prosecution of a witness, the government has a heavy burden of proving that its evidence was not obtained from the witness' testimony. Moreover, the prosecution may be forced to curtail its cross-examination of the witness to lessen the witness' claim that subsequent evidence was obtained from the testimony given at the defendant's trial. Finally, the court noted the opportunity for inviting cooperative perjury among codefendants (i.e., codefendants could secure immunity for each other, and each immunized witness could exonerate his codefendant at a separate trial by falsely accepting sole responsibility for the crime, secure in the knowledge that his admission could not be used at his own trial for the substantive offense). The court noted that the threat of perjury prosecution, which frequently carries lesser penalties than the substantive offense, was not sufficient to prevent such tactics.

The court then held that an inquiry concerning the risks to a subsequent prosecution was better left to the prosecutor and that due process did not

require defense immunity merely because it seemed fair to grant it. Instead, the essential fairness required by the Fifth Amendment guarded against overreaching by the prosecution. *Id.* at 777. The court then held that trial judges should summarily reject claims for defense witness immunity whenever the witness is sought as an actual or potential target for prosecution. No hearing was required and the prosecutor only needed to present an indictment or an in camera ex parte affidavit setting forth the circumstances which supported the prosecutor's suspicion of criminal activity. The court left open the issue whether it had any role where the witness was not indicted, the prosecutor failed to present any claim that the witness was a potential defendant, and the defendant demonstrated that the witness' testimony was clearly exculpatory and not cumulative.

In *United States v Heldt,* 215 US App DC 206, 251; 668 F2d 1238 (1981), cert den 456 US 926; 102 S Ct 1971; 72 L Ed 2d 440 (1982), the court went further and held that the witness need not be an actual or potential target for prosecution and, instead, held that it was improper for the trial court to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness.

In *United States v Thevis,* 665 F2d 616 (CA 5, 1982), cert den 459 US 825; 103 S Ct 57; 74 L Ed 2d 61 (1982), the court held that a district court may not grant immunity to a defense witness merely because that witness has essential exculpatory information unavailable from other sources, noting that judicial use immunity would involve the courts in policy assessments traditionally left to the executive branch and that that immunity would be subject to abuse. The court left open the

question whether a court could grant immunity if it found government abuse.

In *United States v Pennell*, 737 F2d 521, 527 (CA 6, 1984), cert den 469 US 1158; 105 S Ct 906; 83 L Ed 2d 921 (1985), the court held that, contrary to *Smith*, federal courts have no inherent power to grant use immunity to witnesses who assert the privilege against self-incrimination, relying on *Turkish* and *Thevis*. See also *United States v Capozzi*, 883 F2d 608, 613-614 (CA 8, 1989); *United States v Gottesman*, 724 F2d 1517, 1524 (CA 11, 1984), reh den en banc 729 F2d 1468 (1984); *United States v Hunter*, 672 F2d 815, 818 (CA 10, 1982). However, the court left open the question whether prosecutorial misconduct in making immunity decisions can constitute a due process violation. *Pennell, supra* at 526. See also *United States v Herrera-Medina*, 853 F2d 564, 568 (CA 7, 1988).

In *People v Johnson*, 427 Mich 98, 113-114; 398 NW2d 219 (1986), reh den 428 Mich 1206 (1987), our Supreme Court declined to use its inherent authority to require proof of premeditation and deliberation at a preliminary examination when a defendant is bound over on a charge of open murder, stating:

> Whatever the proper scope of this Court's inherent judicial power, properly exercised legislative power such as that in the instant case is entitled to a degree of deference. . . .
>
> The opinion for reversal expresses concern for the discretion given to prosecutors by MCL 767.71; MSA 28.1011. This analysis overlooks the fact that this discretion has been given to the prosecution by the Legislature. It is inappropriate to alter the legislative scheme by exercise of our inherent powers merely because of dissatisfaction with the absence of a standard to determine whether the

prosecutor's discretion has been "reasonably exercised."

*   *   *

. . . Where the Legislature has enacted a constitutionally valid statutory scheme within its legislative authority, this Court should not overrule it simply as a matter of our own preference.

Hence, we now reject the portion of *Smith,* relied on in *Iaconnelli,* which recognized inherent judicial authority to grant use immunity where a defendant claims that the prosecutor's failure to immunize a witness, without prosecutorial misconduct, deprives him of exculpatory evidence essential to his defense.

Affirmed.

MacKenzie, J. *(concurring).* To the extent that the majority opinion holds that defendant was properly charged and that he was not entitled to the benefit of use immunity for his accountant witness, I concur.