*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEDURA WATKINS,

     Plaintiff-Appellant,

V

STATE OF MICHIGAN,

     Defendant-Appellee,

and

WAYNE COUNTY PROSECUTOR,

     Intervening Defendant-Appellee.

UNPUBLISHED
October 22, 2020

No. 348855
Court of Claims
LC No. 17-000218-MZ

Before: METER, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

Plaintiff, Ledura Watkins, appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant, the state of Michigan, and intervening defendant, the Wayne County Prosecutor. Plaintiff sought compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*., after his first-degree murder conviction was vacated on the basis of new evidence revising the strength of the conclusions that may be drawn from microscopic hair analysis evidence. Because the trial court did not err in its ruling that this new evidence did not give rise to a genuine issue of material fact that plaintiff did not perpetrate or participate in the offense, we affirm.

## I. BACKGROUND

Detroit police officers found the body of Yvette Ingram, who had been shot in the head, on the evening of September 6, 1975. Travis Herndon told police that he had information about the murder after he was arrested for an unrelated armed robbery. Plaintiff was subsequently arrested and charged with the murder. At plaintiff's trial, Herndon testified that he had spent time with plaintiff and Gary Vazana in September 1975, and that on the evening of September 6, 1975,

-1-

Vazana told plaintiff and Herndon to kill Ingram, who sold drugs. Herndon also said that Vazana gave plaintiff a gun, that plaintiff drove the two of them to Ingram's house in Vazana's car and gave Herndon the gun. Plaintiff rang the doorbell because he knew Ingram, while Herndon stood to the side with the gun. When Ingram answered the door, plaintiff pushed her inside, and Herndon followed them upstairs into the bedroom where he retrieved a stash of drugs. According to Herndon, plaintiff, who had the gun, told Herndon to hold a pillow over Ingram's face, and plaintiff then put the gun to the pillow and shot Ingram twice.

The circuit court heard arguments about the admissibility of microscopic hair analysis evidence outside the presence of the jury. Detroit Police Officer Ronald Badaczewski and Sergeant Mary Jarrett, who were both assigned to the serology and trace evidence area of the crime lab, testified. They both testified that microscopic hair analysis involved the comparison of known and unknown hair samples on the basis of 15 different characteristics, that a known and unknown hair could be microscopically similar and have a common origin, and that it was not possible to say with reasonable scientific certainty that an unknown hair came from a known suspect. Sergeant Jarrett stated that microscopic hair analysis was more accurately used as a tool of comparison rather than identification, and she agreed that it should be considered corroborative, not conclusive.

After the circuit court ruled the evidence admissible, Officer Badaczewski testified in front of the jury about the hair comparison process. He stated that he received known hair samples from Ingram, plaintiff, and Herndon, as well as unknown hairs from clothing and bedding at the crime scene. Comparing the unknown hairs from the crime scene that were dissimilar to Ingram's hair with the samples taken from plaintiff and Herndon, he confirmed, "within reasonable scientific certainty," that the unknown hairs were similar to hairs taken from Herndon and from plaintiff. Officer Badaczewski testified that hairs taken from the scene and hairs taken from Herndon and plaintiff "were microscopically similar and could have come from a common origin." Officer Badaczewski stated that of the 12 to 15 hairs found on Ingram's pants, one hair was similar to plaintiff's hair. Officer Badaczewski further testified that it was not possible to assign a "degree of reliability" to make a positive identification, but he agreed that it was possible to state with a "high degree of probability" that an unknown hair and a known hair sample had "a common origin."

Plaintiff was convicted of first-degree premeditated murder and sentenced to life imprisonment. This Court affirmed the conviction, in part concluding that the trial court had properly ruled that the microscopic hair analysis evidence was admissible. *People v Watkins*, 78 Mich App 89, 95-96; 259 NW2d 381 (1977). Herndon subsequently recanted his trial testimony in June 1980, stating that Vazana, who had since died, was the one who killed Ingram while Herndon was with Vazana. Plaintiff then filed a motion for a new trial, which the circuit court denied, rejecting Herndon's recantation as unreliable. Plaintiff did not appeal this decision. In 2010, plaintiff applied for a pardon, in which he took responsibility for the killing. Attached to the application were psychological reports from the 1980s, noting that plaintiff had made more direct statements of responsibility for the killing.

In 2013, the Federal Bureau of Investigation (FBI) agreed that examiners regularly overstated the conclusions that could be drawn from microscopic hair analysis evidence. It concluded that a forensic examiner could state that a known hair sample could be included or excluded as a possible source of unknown hair at a crime scene, but it was not possible to attach a

probability to this possible inclusion or exclusion because the size of the pool of people who could have been a source for the hair was unknown. Thus, a forensic examiner who testified that an unknown hair likely came from a known source would have been overstating the conclusions that could be drawn from microscopic hair analysis evidence. Julie Howenstine, a forensic biology and forensic DNA specialist, stated in an affidavit that Officer Badaczewski's trial testimony overstated the significance of the evidence in plaintiff's case when he stated his opinion with a reasonable scientific certainty.

Plaintiff filed a motion for relief from judgment on the basis of this new evidence regarding the limitations of microscopic hair analysis evidence. With the parties' agreement, the circuit court granted the motion, vacated plaintiff's conviction and sentence, and dismissed the case without prejudice because the prosecution did not have sufficient evidence to retry the case. The stipulated dismissal order noted that the prosecution's case rested on Herndon's testimony and the microscopic hair analysis evidence, that the hair samples had since been destroyed and could not be DNA tested, and that the new evidence made a different result probable on retrial because Howenstine's proposed testimony and the new FBI standards were unrefuted.

Plaintiff subsequently filed a complaint for compensation under the WICA, citing Herndon's recantation, the 2013 FBI determination, and the Howenstine affidavit as new evidence showing that he did not perpetrate the offense. Officer Badaczewski testified that in 1975, when offering a level of certainty as to how hairs compared to each other, he would state that they were "microscopically similar and could have had a common origin." Officer Badaczewski testified that it was possible to use hair analysis to exclude a suspect, but not to include a suspect. When presented with the hypothetical scenario of how to describe a hair that was potentially similar to hair samples from two different people, Officer Badaczewski stated that he would not be able to eliminate either individual, but he could say it was more likely to be one individual over the other. In that scenario, Officer Badaczewski stated, hair comparison was not a tool of identification, but it had "probative value" that he would use to advise an investigator to look more closely at one suspect over another.

The state filed a motion for summary disposition. The Wayne County Prosecutor concurred and argued that plaintiff did not produce evidence that showed he did not perpetrate the crime. It produced a report from David Stephens, a forensic scientist, that criticized Howenstine's affidavit. Stephens acknowledged that Officer Badaczewski may have overstated the conclusions that could be drawn from the microscopic hair analysis evidence at trial and at his 2017 deposition because Officer Badaczewski did not clarify whether his testimony related only to the three known sources, Ingram, plaintiff, and Herndon, or to the entire population. Plaintiff responded that Herndon's recantation was also new evidence that was corroborated by other evidence in the form of the discredited microscopic hair analysis evidence, showing that plaintiff was not present during the offense. Defendants replied that plaintiff supplied no evidence corroborating Herndon's recantation and that the microscopic hair analysis evidence remained probative of plaintiff's involvement because only Officer Badaczewski's testimony about the level of certainty was undermined, and that the hair still connected plaintiff to the murder scene.

The trial court granted summary disposition in favor of defendants. It ruled that the microscopic hair analysis evidence retained probative value even after correcting for Officer Badaczewski's overstatements of the evidence because Officer Badaczewski's testimony that a

hair found on Ingram's pants was microscopically similar to, and could have a common origin with, plaintiff's hair remained valid. The trial court ruled that the evidence regarding the developments in microscopic hair analysis science was the only new evidence that caused plaintiff's conviction to be vacated and that it would not consider any other new evidence cited by plaintiff.

## II. DISCUSSION

Plaintiff argues that the trial court erred by continuing to assign probative value to the microscopic hair analysis evidence and by ruling that there was no genuine issue of material fact as to whether the new evidence that resulted in the vacation of plaintiff's conviction showed that he did not perpetrate the offense. We disagree.

This Court reviews de novo a trial court's ruling on a motion for summary disposition as well as matters of statutory interpretation. *Sullivan v Michigan*, 328 Mich App 74, 80; 935 NW2d 413 (2019). Summary disposition is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A motion for summary disposition pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim and is appropriate when there is no genuine issue concerning any material fact." *Maples v Michigan*, 328 Mich App 209, 217; 936 NW2d 857 (2019). This Court considers all substantively admissible documentary evidence in the light most favorable to the nonmoving party. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 155; 871 NW2d 530 (2015). "When interpreting a statute, the goal is to ascertain and give effect to the intent of the Legislature. Where the language of the statute is unambiguous, the statute must be applied as written." *Ricks v Michigan*, 330 Mich App 277, ___; ___ NW2d ___ (2019) (Docket No. 342710) (quotation marks and citation omitted); slip op at 3.

An individual who has been convicted of and imprisoned for a crime "that he or she did not commit" may seek compensation from the state. MCL 691.1753. To be entitled to judgment under the WICA, a plaintiff must establish, by clear and convincing evidence, all of the following:

> (a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

> (b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. . . .

> (c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial. [MCL 691.1755(1).]

MCL 691.1752(b) defines "new evidence" as follows:

(b) "New evidence" means any evidence that was not presented in the proceedings leading to plaintiff's conviction, including new testimony, expert interpretation, the results of DNA testing, or other test results relating to evidence that was presented in the proceedings leading to plaintiff's conviction. New evidence does not include a recantation by a witness unless there is other evidence to support the recantation or unless the prosecuting attorney for the county in which the plaintiff was convicted or, if the department of attorney general prosecuted the case, the attorney general agrees that the recantation constitutes new evidence without other evidence to support the recantation.

In this case, the parties dispute whether the new evidence clearly and convincingly shows that plaintiff did not perpetrate or participate in the killing of Ingram, as required by the first clause of MCL 691.1755(1)(c). The trial court ruled that the new evidence consisted of evidence calling into question the microscopic hair analysis evidence, as stated in the stipulated order vacating the conviction. Plaintiff does not contest this ruling. Instead, he argues that the trial court minimized the effect of Howenstine's criticism of the evidence given that the circuit court vacated the conviction on the basis of that criticism with the prosecution's agreement, ignored Officer Badaczewski's deposition testimony that hair comparison evidence served investigative purposes only, and inflated the significance of Officer Badaczewski's trial testimony that was discredited by the new evidence.

Undermining the level of certainty of Officer Badaczewski's trial testimony about the hair analysis evidence does not give rise to a genuine issue of material fact that plaintiff did not perpetrate or participate in the offense. Officer Badaczewski testified in front of the jury that hair samples obtained from plaintiff and one hair found at the crime scene "were microscopically similar and could have come from a common origin," and Officer Badaczewski endorsed the phrase "reasonable scientific certainty" to describe the strength of that conclusion. Howenstine criticized the use of the phrase "reasonable scientific certainty" as misleading and not scientifically supported. Howenstine asserted that microscopic hair analysis cannot be used to conclusively link or exclude a known hair sample to or from an unknown hair. The FBI likewise criticized assertions of probability in connection with such evidence, but it would allow forensic examiners to opine whether a known hair sample could be included or excluded as a source of an unknown hair.[1] Microscopic hair analysis evidence may still be useful in stating that an individual may or may not have been present at a crime scene as long as no probabilities are attached to how likely it was that the individual may or may not have been present. Consequently, even with the FBI acknowledging that such evidence had been overstated in the past, such evidence remains viable. Consistent with the limited usefulness of microscopic hair analysis evidence, Howenstine did not criticize Officer Badaczewski's testimony that the unknown hair and plaintiff's hair were microscopically similar and could have come from a common origin. Officer Badaczewski's testimony that the hairs were "similar" and "could" have had a common origin did not state a conclusive opinion, which is consistent with the FBI guidance and Howenstine's affidavit. Accordingly, Officer Badaczewski's testimony that the hairs could have been similar was not discredited; rather, the certainty or

---

[1] We need not address plaintiff's argument that this document was admissible because the trial court considered the effect of the document before ruling it inadmissible hearsay.

probability of this conclusion was limited. For this reason, the trial court did not err by continuing to assign "probative" value to Officer Badaczewski's testimony.

Plaintiff contests this ruling by citing Officer Badaczewski's deposition testimony that microscopic hair analysis evidence has probative value during an investigation but should not be used at trial. Officer Badaczewski testified that hair analysis could be a useful investigatory tool when presented with the hypothetical scenario of a hair possibly corresponding to two different suspects. Officer Badaczewski stated that if he could not eliminate one or the other suspect, he would tell an investigator that the hair was more similar to suspect A rather than suspect B, but he would not so testify in court. This hypothetical scenario is different from what Officer Badaczewski testified to at trial when he stated that one of the hairs was microscopically similar to and could have a common origin with plaintiff's hair because Officer Badaczewski did not testify that the hair was similar to both plaintiff's hair and Herndon's hair. Therefore, the trial court did not err by concluding that Officer Badaczewski's deposition testimony did not affect the probative value of the subject evidence.

Additionally, Herndon's testimony remains an obstacle to plaintiff's argument that the new evidence clearly and convincingly established that plaintiff did not perpetrate or participate in the offense. At trial, Herndon's testimony about how he and plaintiff committed the murder was the primary evidence against plaintiff. The hair analysis evidence corroborated Herndon's testimony that plaintiff was present, although defense counsel made the point on cross-examination that the hair could have been present in Ingram's house for months, consistent with testimony that plaintiff had been to Ingram's house before. Plaintiff's conviction was vacated because of the limitations on microscopic hair analysis evidence and the prosecution's inability to test the hair evidence. Herndon's recantation, which the circuit court previously rejected as unreliable, did not contribute to the vacation of the conviction and the dismissal of the charge. Revising the import of the hair analysis evidence reduced the corroboration for Herndon's trial testimony, but it does not create a genuine issue of material fact regarding plaintiff's involvement.

Plaintiff criticizes the trial court's reliance on statements made in the 2010 clemency application because those remarks did not constitute new evidence, contrary to the trial court's ruling that the analysis was limited to whether the new evidence regarding the interpretation of the hair analysis evidence showed that plaintiff did not perpetrate the offense. The trial court's reliance on plaintiff's statements accepting responsibility for the killing in the 2010 clemency application may have been extraneous to the requirement in MCL 691.1755(1)(c) that a WICA claimant show that the new evidence clearly and convincingly demonstrates the plaintiff's innocence, but they do not detract from its ruling that the new evidence did not show that plaintiff did not perpetrate or participate in the offense. Therefore, the trial court's reliance on those statements was not error requiring reversal.

When the prosecution agreed to the order vacating plaintiff's conviction, the prosecution noted that the hair was no longer available for DNA testing, and it agreed that Howenstine's unrefuted affidavit and the FBI's revised standards for evaluating hair evidence were new evidence that made a different result probable on retrial. The prosecution's agreement to the order vacating plaintiff's conviction reflected its inability to prove guilt beyond a reasonable doubt. This recognition, however, does not translate to a genuine issue of material fact regarding whether plaintiff perpetrated or participated in the offense for the purpose of a WICA claim.

Affirmed.

/s/ Patrick M. Meter
/s/ Michael J. Riordan