*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOEL EDWARD LAYMAN,

Defendant-Appellant.

UNPUBLISHED
September 30, 2024
4:04 PM

No. 365280
Livingston Circuit Court
LC No. 2022-027221-FH

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and trespass, MCL 750.552. The dispositive issue in this appeal is whether the trial court's questioning of a witness, and its overall handling of defendant, who was representing himself during this one-day jury trial, constituted plain error that affected defendant's substantial rights. Because the transcript does not reveal any errors by the trial court, and simply reflects the court's attempts to control and direct the proceedings, we affirm.

## I. JUDICIAL BIAS

In addressing this issue, we recognize the strong legal presumption that a trial court acts *without* bias, and that a party challenging a ruling on the basis of bias has a high hurdle to overcome. The Supreme Court and this Court have repeatedly acknowledged this strong presumption of judicial impartiality. See, e.g., *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996) ("the party who challenges a judge on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality"); *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) ("A defendant claiming judicial bias must overcome 'a heavy presumption of judicial impartiality.' ") (Citation omitted.) As the Supreme Court noted on this point some time ago:

> The difficulty is that we live in an imperfect world. We therefore judge the actions and responses of a trial court in the light of the situation with which he is confronted. He stands in our eyes garbed with every presumption of fairness, and integrity, and heavy indeed is the burden assumed in this court by the litigant who

-1-

would impeach the presumption so amply justified through the years. [*Mahlen Land Corp v Kurtz*, 355 Mich 340, 350-351; 94 NW2d 888 (1959).]

In recognition of this presumption, it has long been the case that judicial rulings alone almost never provide a valid basis for finding judicial bias or partiality, *Cain*, 451 Mich at 496, particularly in the absence of any evidence of "a deep-seated favoritism or antagonism that would make fair judgment impossible[,]" *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009) (quotation marks and citation omitted). Importantly, a trial judge's remarks that "are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009).[1]

Initially, it is critical to emphasize that there is no suggestion or evidence that the trial court's questions demonstrated "a deep-seated favoritism or antagonism that would make fair judgment impossible[,]" *In re Contempt of Henry*, 282 Mich App at 680 (quotation marks and citation omitted), or that the trial court's remarks were "critical of or hostile to counsel, the parties, or their cases, *In re MKK*, 286 Mich App at 567, and even that conduct does not ordinarily establish disqualifying bias. In other words, we are not reviewing a case where it is suggested that the trial court acted with an improper temper, badgered the defense, or took other actions to preclude defendant from properly presenting his case. Instead, each instance defendant has raised relates to the trial court asking questions of witnesses during trial.

The dissent chides us for invoking this presumption, arguing that it has no place in the fair trial or due process analysis, or under *People v Stevens*, 498 Mich 162; 869 NW2d 233 (2015), and that our citation to civil cases employing that standard have no place in this criminal matter. However, just this year the Supreme Court utilized this presumption when addressing a defendant's due process argument that the judge's ex parte communications with the prosecutor during trial denied him a fair trial. And it did so citing some of the same civil cases we cite here. See *People v Loew*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164133); slip op at 20, citing in part *Cain*, 451 Mich at 498, and *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012).[2] We also note that our Court has continued to rely on this presumption when

---

[1] "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Unpreserved arguments of judicial bias are reviewed for plain error affecting defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). To obtain relief under plain-error review, a defendant must demonstrate that an error occurred, that it was clear or obvious, and that it affected the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Although the dissent is correct that the last two *Carines* prongs are essentially satisfied when a defendant has established an error on an unpreserved structural issue, we have concluded that no error has occurred, making analysis of the remaining *Carines* prongs unnecessary.

[2] The dissent attempts to distance this case from *Loew* on the basis of the facts being different between the cases. But we cited *Loew* to establish two legal points that the dissent challenged, i.e., to show that the presumption that a judge does not act with bias has been applied post-*Stevens*

-2-

addressing the *Stevens* factors, with our dissenting colleague joining three of those decisions this year. See, e.g., *People v Washington*, unpublished per curiam opinion of the Court of Appeals, issued August 22, 2024 (Docket Nos. 362231, 362233, and 362234), p 13-14; *People v Frinkle*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2024 (Docket No. 359649), p 9-13; and *People v Hawkins*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2024 (Docket No. 364000), p 4-6.

We do recognize that neither *Stevens* nor *People v Swilley*, 504 Mich 350, 373; 934 NW2d 771 (2019), mention the presumption in the course of their analyses, while other courts have. In any event, use of the presumption is not dispositive here, as even if this presumption has no place in this analysis, our conclusion below, made through consideration of the *Stevens* factors, would remain the same.

The *Stevens* Court set forth a nonexhaustive list of factors for reviewing courts to consider in evaluating claims of judicial bias:

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*People v Stevens*, 498 Mich at 164.]

Because this list is nonexhaustive, "[r]eviewing courts may consider additional factors if they are relevant to the determination of partiality in a particular case." *Id*. at 172. We do not "evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id*. at 171-172.[3]

Before embarking on an analysis of the *Stevens* factors individually, we first address defendant's specific challenges to the trial court's questions, as those arguments touch on several of the *Stevens* factors.

Defendant first argues that the trial court's questioning of Sergeant Sell (the arresting officer) elicited testimony that was favorable to the prosecution. MRE 614 governs the calling and interrogation of witnesses by the trial court:

> (a) Calling by Court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

---

when a defendant makes a due process challenge to conduct by the trial court during trial, and that the civil cases relied upon to establish the presumption applied in criminal cases as well.

[3] It is also important to keep in mind that the question is whether defendant received a fair trial, "not a perfect one for there are no perfect trials." *People v Miller*, 482 Mich 540, 559-560; 759 NW2d 850 (2008) (quotation marks and citation omitted).

(b) Interrogation by Court. The court may interrogate witnesses, whether called by itself or by a party.

(c) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

Under MRE 614, a trial judge is permitted to question witnesses, but that questioning should be to help clarify testimony. *Swilley*, 504 Mich at 372. "Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Id*. (quotation marks and citation omitted). Further, a trial judge may intervene to "expedite matters, prevent unnecessary waste of time, or clear up an obscurity." *Id*.

One aspect of defendant's challenge is when the prosecution recalled Sergeant Sell as a witness and the trial court asked Sergeant Sell, after cross-examination ended, questions regarding (1) whether an individual with only one handcuff on could be considered a "dangerous situation," (2) whether Sergeant Sell brought charges against defendant, and (3) the exact parameters of when and how defendant resisted arrest. These lines of questions did not evidence judicial bias resulting in an unfair trial.

With respect to the questions regarding a suspect with only one hand cuffed, the record reflects that this was an attempt by the trial court to clarify what officers have to deal with when making an arrest. This issue arose because, prior to the prosecution's recalling of Sergeant Sell, Deputy Joel Ash, a responding deputy, testified about the danger of individuals resisting arrest. While Deputy Ash could not recall how defendant resisted at the time of his arrest, he did testify that an individual resisting arrest could cause the situation to "deteriorate quickly" and that officers should quickly handcuff individuals as a result. Defendant did not object to Deputy Ash's testimony, and he did not cross-examine Deputy Ash regarding the possible dangers during an arrest. It is not error for a court to attempt a follow-up point of clarification. Unfortunately, that question was essentially on an irrelevant point, as no evidence showed that defendant had only one hand cuffed at any point in time. In any event, in light of the irrelevancy of the question, and given the trial court's later instruction that its statements and comments were not to be considered by the jury, the question and subsequent answer could not have had any real impact on the jury. See *People v Ericksen*, 288 Mich App 192, 199-200; 793 NW2d 120 (2010).

With respect to the trial court asking Sergeant Sell if he brought criminal charges against defendant, Sergeant Sell explained that he did not. The trial court's question addressed defendant's insinuation during cross-examination of Sergeant Sell that Sergeant Sell had charged defendant with assaulting, resisting, or obstructing a police officer to keep him in jail for a longer period of time. This line of questions was directly relevant to an issue raised by defendant and was again geared towards providing clarification to the jury regarding the role of an arresting officer. The trial court's remaining questions for Sergeant Sell were limited to clarifying Sergeant Sell's prior testimony about defendant's resistance during the arrest and asking if it had misheard the testimony. These questions provided clarification about when Sergeant Sell felt defendant started resisting, which was an issue the jury also sought clarification on by asking their own questions on the subject.

-4-

Defendant also complains of several instances in which the trial court purportedly improperly interjected during the prosecution of his case. There is no doubt that the trial court did interrupt and interject several times during defendant's cross-examination of witnesses and during his direct testimony. But none of these instances reflected a judicial bias. Defendant first takes issue with the trial court's interrupting the prosecution's cross-examination of defendant, stating, "I'm going to give the jury some idea what I, what I think. It doesn't matter if you're the owner of a piece of property, if you are acting as an agent or a manager or even the hotel clerks. He said to tell you to leave." The trial court proceeded to inform the jury that a hotel agent, manager, or clerk had the ability to tell hotel guests to leave. Defendant concludes that this pierced the veil of impropriety because the trial court essentially told the jury that the law did not support his position.

Two points on this issue. First, as defendant concedes, what the court actually stated to the jury was an accurate statement of the law, albeit perhaps not stated in the best manner. Second, the context of the court's statement is important. During pretrial proceedings, the trial court had ordered defendant not to argue to the jury that he was a tenant of the hotel. And, outside the presence of the jury, the court repeatedly reminded defendant that, without providing support for his position (which he never did), he could not delve into that area of the law. Despite these proper efforts, from the start of trial defendant attempted to argue to the jury that various rights and laws regarding property ownership applied to his case. The court's statement to the jury was done to prevent the jury from being misled by defendant as to the controlling law. There can be no real question that the court was acting within its authority when providing this clarification, and the transcript reflects it did so in a professional and non-adverse manner.[4] Although the court utilized the phrase "I think" a couple of times when informing the jury about what was legally relevant to the trespass charge, that phraseology alone is not enough to demonstrate bias. And, the instruction to the jury to disregard any personal beliefs the jury may think the court had sufficiently dispelled any potential harm to defendant's rights.

The next instance of alleged judicial bias was the trial court's statement to defendant during his closing argument: "We're never going to agree. Please argue from the facts that were presented to the jury in this courtroom and argue it with the law that is applicable." The court's statement (again, done in an appropriate manner) was prompted by defendant's (repeated) attempt to inform the jury that "guest law" applied to his case. Defendant attempted to do so even though, as previously noted, the trial court repeatedly told defendant through its rulings not to discuss tenancy and guest law. But because defendant refused to follow the trial court's order and instruction, the court simply remarked that the two would not agree on the issue. The court's attempt to limit defendant's arguments to those that are legally relevant to the issues before the jury is not evidence

---

[4] To this point, the transcript also reveals that, when outside the presence of the jury, the parties discussed the parameters of relevant testimony and arguments, and on each occasion the trial court went to great lengths to explain to defendant why certain matters were not relevant, and could not be raised during trial. The record shows proper and professional discussions on the record between the trial court, defendant, and the prosecutor, where most often defendant would ultimately agree with what the trial court stated, and promise to limit his questions or testimony consistent with what the trial court indicated was relevant. Though defendant did not always abide by these promises, the record discloses no evidence of bias by the trial court.

of bias, but is instead "evidence reflect[ing] the court's inherent authority to control its own courtroom, docket, and manage defendant's *pro se* inefficiencies and nonmeritorious litigation." *People v Cummings*, 2023 IL App (first district) 220520; ___ NE3d ___ (2023), at *11.

Defendant also challenges the frequency of the trial court's interruptions and interjections. However, the record reflects that the court's conduct was necessitated by defendant's own conduct, as it was overwhelmingly taken in an attempt to prevent defendant from arguing facts that were not in evidence, belaboring topics that the court found to be irrelevant, or confusing the jury with inaccurate statements of law. It was not a display of its own bias against defendant. See *id*.

The above analysis of defendant's specific arguments touches upon several of the *Stevens* factors, but it is worth taking a look at each individual factor to ensure that no error occurred. And viewing the challenged conduct under those factors reveals that the court's conduct did not come close to piercing the veil of impartiality. Under factor one, the nature of the judicial conduct, the trial court's conduct was largely to keep defendant from (1) arguing about facts not in evidence, (2) trying to apply incorrect law to the case, (3) arguing with witnesses during cross-examination, (4) discussing other cases he was involved in, and (5) testifying to irrelevant facts. The record reflects that in the context of defendant's self-representation, the trial court's conduct was appropriate to address defendant's inaccurate statements of law and irrelevant arguments, and the court's conduct did not demonstrate bias. See *Stevens*, 498 Mich at 185-186.

In evaluating the second factor, although assessing the trial court's tone and demeanor firsthand is difficult when reading a transcript, *id*. at 172, considering the nature of the words used by the trial court, *id*. at 176, it is clear that the trial court was relatively patient with the myriad issues presented by defendant's self-representation. The trial court's language when instructing defendant on how to properly examine witnesses was direct and nonconfrontational, and the court allowed defendant some leeway in what he could testify about during his direct testimony. There was no badgering of defendant, and the trial court always referred to and addressed defendant in a professional manner. Overall, the trial court's tone and demeanor did not reflect bias against defendant.

The third *Stevens* factor involves consideration of the scope of the trial court's conduct in the context of the trial's length and the complexity of the issues. *Id*. at 172. "[A] judge's inquiries may be more appropriate when a witness testifies about a topic that is convoluted, technical, scientific, or otherwise difficult for a jury to understand." *Id*. at 176. Defendant's trial was relatively short, lasting one day with only four witnesses testifying. However, as recognized by the prosecution and the trial court, defendant's attempts throughout trial to argue that various property rights and law applied to his case created the real possibility of confusion, as did his testimony about other cases he was involved in and other similar irrelevant facts. In addition, defendant argued with witnesses during cross-examination and made statements that were inadmissible. Despite the relative simplicity of the case, if left unchecked defendant's conduct during his self-representation would have greatly complicated and confused the issues for the jury. Accordingly, the trial court's conduct was appropriate to limit defendant's testimony and arguments to those relevant to the charges at hand.

As to the fourth factor, we look to whether the trial court's conduct was directed at one side more than the other. *Stevens*, 498 Mich at 176-177. "Judicial partiality may be exhibited

when an imbalance occurs with respect to *either* the frequency of the intervention *or* the manner of the conduct." *Swilley*, 504 Mich at 388 (quotation marks and citation omitted). Although the trial court's interjections during cross-examination and testimony were largely limited to defendant, the frequency of the intervention and the manner of the trial court's conduct do not reflect judicial bias. As previously discussed, the trial court's interventions in the jury's presence were largely to steer defendant from irrelevant issues and to instruct defendant on how to properly cross-examine the prosecution's witnesses. Any of the trial court's direct expressions of frustration or exasperation were made outside the presence of the jury, and even those appeared unheated and professional.[5]

The fifth factor evaluates whether a curative instruction was present and if the curative instruction was sufficient to address any judicial bias. *Stevens*, 498 Mich at 172. The trial court provided the jury with the following instruction:

> It is my duty to see that the trial is conducted according to the law, and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

This instruction directly addresses the concerns raised by defendant and the dissent, as it instructs the jury to disregard any comments or instructions given by the court if the jury believes the court has an opinion about how the case should be decided. And, since jurors are presumed to follow their instructions, *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008), to the extent the jury did believe the court favored the prosecution's case (which, as explained, is quite doubtful), this instruction required them to disregard that belief. There is nothing in the record to indicate that the trial court's conduct was so inappropriate and biased that it could not be addressed by a curative instruction. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) ("Jurors are presumed to follow their instructions, and jury instructions are presumed to cure most errors.") (Quotation marks and citation omitted.) Further, while defendant argues that the trial court's standard instruction did not alleviate its purportedly excessive and inappropriate questioning of defendant, the record reflects that defendant did not request any additional jury instructions to address the trial court's perceived conduct. Should there have been any improper effect from the trial court's conduct toward defendant, the court's instruction was sufficient to nullify it. See *Stevens*, 498 Mich at 177.

---

[5] Again, it is important to note that on several occasions, outside the presence of the jury, the trial court attempted to guide defendant away from introducing evidence that could be prejudicial to him. For example, defendant asked to show the jury video footage of Sergeant Sell and deputies loading defendant's belongings into his car after his arrest, despite the prosecution informing the court and defendant that the deputies discussed finding marijuana in defendant's belongings in the video. The trial court explained to defendant that this portion of the video could affect the jurors' opinions of him, and it permitted the jury to view only the video of Sergeant Sell and the deputies arresting defendant.

In sum, whether we apply the presumptions or not, when the trial court's comments or questions are reviewed in context, we hold that the trial court did not exhibit bias and that defendant received a fair trial.

## II. DUE PROCESS AND FAIR TRIAL

Defendant argues that he was denied due process and a fair trial because Sergeant Sell sat at the prosecutor's table as both the officer in charge and a complainant.

Constitutional questions are generally reviewed de novo, *People v Brown*, 294 Mich App 377, 389, 811 NW2d 531 (2011), while unpreserved constitutional arguments are reviewed for plain error affecting substantial rights, *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law. US Const, Am XIV; Const 1963, art 1, § 17. "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial, and essential to a fair trial is the defendant's right to be presumed innocent." *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022).

At the time of the trial court proceedings, MRE 615, which governs the exclusion of witnesses, provided:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

The trial court has broad discretion to permit an investigating officer who is also a testifying witness to sit at the prosecutor's table at trial. *People v Hayden*, 125 Mich App 650, 659; 337 NW2d 258 (1983), citing *People v Burns*, 67 Mich 537; 35 NW 154 (1887).

At the outset of trial, the prosecutor identified Sergeant Sell as the officer in charge in defendant's case and as a witness. Because Sergeant Sell was a complainant and the officer in charge in defendant's case, his presence at the prosecutor's table was consistent with MRE 615. While defendant argues on appeal that Sergeant Sell's presence at the prosecutor's table was inherently prejudicial, this position is inconsistent with MRE 615 and not reflected in caselaw. See *Burns*, 67 Mich at 538 (providing that the presence of an arresting officer or officer in charge at the prosecutor's table is entirely within the discretion of the trial court). Further, there is no evidence in the record to indicate that the alleged prejudice resulting from Sergeant Sell's presence at the prosecutor's table was comparable to that in the cases cited by defendant on appeal. See *Holbrook v Flynn*, 475 US 560, 569-572; 106 S Ct 1340; 89 L Ed 2d 525 (1986) (holding that the presence of four uniformed police officers in the front row of the courtroom's spectator section did not create an unacceptable risk of prejudice). Defendant's argument to the contrary is simply in error.

## III. JURY INSTRUCTIONS

Defendant's argument that the jury instructions denied him his right to a fair trial because they confused the jury as to what evidence it could consider also lacks merit.

Unpreserved arguments of instructional error are reviewed for plain error affecting substantial rights. *People v Spaulding*, 332 Mich App 638, 652-653; 957 NW2d 843 (2020). "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citation omitted). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021) (quotation marks and citation omitted; alteration in original). A defendant bears the burden of establishing that a trial court's instructional error undermined the reliability of a jury's verdict. See *People v Hawthorne*, 474 Mich 174, 184-185; 713 NW2d 724 (2006). "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

The trial court instructed the jury on what it could consider as evidence during its deliberations, stating, "The lawyer's statements and [defendant's] statements and arguments and any commentary are not evidence." Because defendant represented himself at trial, he argues that his direct testimony was almost indistinguishable from inadmissible statements and the trial court's instruction to the jury risked confusion. However, the record reflects that the trial court clearly differentiated between defendant's statements and testimony throughout the trial. The trial court used the term "[defendant's] statements" only to refer to statements defendant made while improperly cross-examining witnesses. The trial court also specifically explained to defendant twice, in the jury's presence, that statements he made during cross-examination would be stricken from the record because defendant was not testifying under oath.

Additionally, the trial court provided the jury with preliminary instructions clarifying that the only evidence they could consider was "the sworn testimony of the witnesses, the exhibits admitted into evidence, and anything else" the court told the jury it could consider. Further, the jury presented the trial court with several questions during its deliberations. The jury asked the trial court for clarification regarding the language of the applicable statutes, it asked to watch the footage of defendant's arrest again, and it asked if defendant's trespassing charge was a misdemeanor. However, the jury did not ask the trial court about how to properly consider defendant's testimony. Accordingly, the record reflects that the trial court properly instructed the jury regarding what it could consider as evidence and that the jury was not confused as to how it should consider defendant's testimony. See *Montague*, 338 Mich App at 37.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray

-9-